ALBERT H. KASTNER v. DALTON DEVELOPMENT, INC.

122 N. W. (2d) 183.

June 7, 1963—No. 38,889.

512

*Carl A. Swenson* and *Thomas, King, Daubney, Swenson & Collatz,* for appellant.

*Roger R. Lenzmeier* and *Vogel, Lemmons & Lenzmeier,* for respondent.

FRANK T. GALLAGHER, COMMISSIONER.

Appeal from an order of the district court denying plaintiff's motion for amended findings or for a new trial.

At the outset defendant contends that this appeal is limited in legal effect to a consideration of the order denying a motion for a new trial. It is true that an order denying a motion to amend findings is not ap-

pealable, whether or not the motion includes an alternative motion for a new trial, but the error claimed is reviewable when properly presented on an appeal from an appealable order or judgment. Donarski v. Lardy, 251 Minn. 358, 88 N. W. (2d) 7. On the merits, however, review is limited to a determination of whether the findings are supported by the evidence. Frisbie v. Frisbie, 226 Minn. 435, 33 N. W. (2d) 23.

The facts giving rise to the issues raised on the merits are these. Sometime prior to September 1960, Shuster, Inc., (hereafter referred to as Shuster) a general contractor, and defendant, Dalton Development, Inc., (hereafter referred to as Dalton) a corporation formed for the purpose of acquiring and developing land, entered into an agreement whereby the former acquired an option to purchase some lots in Dalton Park, land then owned by Dalton. In September 1960, Shuster and Dalton entered into a second option agreement whereby Dalton granted to Shuster an option on Lots 3, 4, 5, and 6, Block 7; Lot 1, Block 1; and Lots 1 to 18, Block 6, Dalton Park Addition, which option was to run until May 1, 1961. This agreement was made in consideration of relinquishment by Shuster of the option previously granted by Dalton. The agreement of September 1960 provided for payment by Shuster of a purchase price of $200 per lot. Dalton agreed to furnish an abstract showing good and marketable title and to convey by limited warranty deed.

Before September 1960, Shuster had contracted work to be done on Lots 3 and 4, Block 7, Dalton Park, consisting of excavation and construction of basements for homes to be erected there. This work was commenced on May 5, 1960, and completed by May 16, 1960. As a result, the contractors performing such work acquired mechanics liens on the two lots and on August 15, 1960, one of them filed suits for foreclosure, naming both Dalton and Shuster defendants. These actions were pending when Dalton and Shuster entered into the option agreement in September 1960 and account for incorporation of the following provision in the agreement:

"Further, the second party agrees to deliver a clear title by limited Warranty Deed and Abstract of title on any lots so purchased; *said Lots shall be subject to the rights of third parties, which rights have accrued*

*or shall be accrued by acts of first party hereto* and shall be subject to lien rights for any improvements or alterations made thereto." (Italics supplied.)

Shortly after commencement of the foreclosure actions, demand was made upon Andrew Shuster, president of Shuster, by Dalton's attorney, Richard Vogel, for discharge of the liens. Mr. Vogel, who acted as attorney for defendant throughout the transactions involved here, testified at the trial that he had a conversation with Mr. Shuster, who advised him that he would take the lots off Dalton's hands; that the liens were for a reasonable amount; and that there was no defense to them. Vogel further testified that liens were also developing on other property of Shuster and that the basements on Lots 3 and 4 were not capped, which was necessary in order to preserve the value of the improvements from destruction by the winter frost. For these reasons, the lots were conveyed sometime in November 1960 to grantees designated by the lien claimants in exchange for a release of Dalton from any personal liability arising out of the mechanics liens.[1]

On November 18, 1960, Shuster assigned all of its rights under the option agreement of September 1960 to plaintiff in consideration of his payment of $100 per lot, or a total of $2,300. Concurrently, an attempt was made to exercise the option. Mr. Shuster wrote Dalton purporting to exercise the option on five of the lots and requesting the abstracts of title to be sent to Shuster's attorney, John G. Bouthilet. Dalton turned the letter over to Vogel. Bouthilet thereafter telephoned him and after discussion they agreed that the option could not be exercised in part and that it was necessary to exercise the option on all 23 lots described in the option agreement. No further communication was addressed to defendant or its attorney until January 3, 1961, when Bouthilet wrote a letter to Dalton, subscribing the letter as attorney for

---

[1]The deed itself was introduced into evidence and was dated January 13, 1961. Vogel explained that to his knowledge the deed had been prepared and signed in advance, that Dalton's liability had been discharged in November 1960, and that to the best of his recollection this discharge was concurrent with delivery of the deed.

Shuster, Inc., and purporting to exercise the option pursuant to the agreement but erroneously describing the property.[2]

In a telephone conversation between Mr. Vogel and Mr. Bouthilet on January 9, 1961, it was agreed that the description of the property in the letter of January 3, 1961, was incorrect and that Mr. Bouthilet had intended to describe the 23 lots placed under option by the agreement. In the same conversation Mr. Vogel stated that Lots 3 and 4 in Block 7 were not available because they had been conveyed to grantees designated by the lien claimants. By letter dated January 10, 1961, Mr. Vogel confirmed this conversation. Thereafter on January 17, 1961, Bouthilet wrote to Vogel, again attempting to exercise the option ostensibly in behalf of Shuster and requesting that Vogel forward the abstracts of title to the property. On this occasion Bouthilet properly described the property. The attempt to exercise the option was upon *all* of the 23 lots, including the 2 lots which Vogel had advised were not available.[3]

A creditors' petition in bankruptcy had been filed on January 9, 1961, by several creditors of Shuster, Inc. Vogel knew of this sometime prior to receiving the letter of January 17.

By the terms of the agreement of September 1960, it was incumbent upon Dalton to provide abstracts of title prior to payment by Shuster. It did not forward the abstracts to Mr. Bouthilet as he had requested in the letter of January 17. The only reason given was Vogel's testimony that it was Dalton's position that the letter of January 17 was ineffective and that the earlier attempt to exercise the option with respect to only five lots was not a bona fide effort to exercise it.

It is defendant's contention that throughout the transaction it had no

[2]The letter described 11 lots listed in the preamble to the September 1960 agreement, option upon which was therein relinquished by Shuster in consideration of the option to purchase the 23 lots herein involved.

[3]Mr. Bouthilet stated in that letter: "By coincidence, I happened to meet Mr. Shuster while I was in Washington last week and discussed this matter with him briefly. It is his intention to exercise the Option on *all* of the lots covered, including those which had basements. As you stated in your previous correspondence, it would appear that this Option covers only all of the lots and therefore we must exercise our Option in this matter."

knowledge of Shuster's assignment of the option to plaintiff and that at all times Dalton and its attorney, Vogel, understood that they were dealing with Shuster. Plaintiff testified that he spoke to Mr. Vogel about his interest in the option in February 1961. Mr. Vogel denies that he did so. The court found from the evidence that neither plaintiff nor anyone acting on his behalf notified Dalton of plaintiff's interest as an assignee, exercised the option, or made a bona fide offer to take up the option. From these facts, the court concluded that judgment should be entered for defendant.

In the first place the evidence strongly supports the finding of the court that defendant had no notice or knowledge of the assignment by Shuster. Nor does the evidence establish facts sufficient to put defendant on constructive notice of the assignment. This has the following results:

(1) Dalton's duty to perform under the option agreement of September 1960 with Shuster, Inc., did not extend to plaintiff as its assignee since notice to Dalton determines the time at which its obligation to perform would shift from Shuster to plaintiff.

(2) While notice to Dalton was not essential to the validity of the assignment as between Shuster and plaintiff, in the absence of notice, Dalton was justified in continuing to deal with Shuster as its obligee under the option contract. Pillsbury Investment Co. v. Otto, 242 Minn. 432, 65 N. W. (2d) 913.

(3) Absent notice to it, the assignment of November 18, 1960, was without prejudice to Dalton's right to assert any defenses which arose subsequent to such assignment. Minn. St. 540.03;[4] 2 Dunnell, Dig. (3 ed.) § 561; accord, Simpson, Contracts, § 96; Restatement, Contracts, § 167(1).

The question presented therefore is whether the evidence sustains the finding by the court that no one acting in plaintiff's behalf exercised the option or made a bona fide offer to do so.

---

[4] G. S. 1894, § 5157, substantially the same as Minn. St. 540.03, was enacted for the purpose of protecting the obligor of an assignable agreement from prejudice which might arise out of an undisclosed assignment of his obligation. Quigley v. Welter, 95 Minn. 383, 104 N. W. 236.

The first attempt to exercise the option was by letter dated November 18, 1960, from Shuster to defendant. By this letter Shuster attempted to exercise the option on only 5 of the 23 lots included in the option agreement. By telephone conversation thereafter between Vogel, as attorney for defendant, and Bouthilet, purportedly acting as attorney for Shuster, it was agreed that the option must be exercised on the entire 23 lots.[5] In this regard, the rule is that the interpretation placed upon the contract by the parties themselves is to be considered by the court, and is entitled to great, if not controlling, influence in ascertaining their understanding of its terms. 12 Am. Jur., Contracts, § 249. The court upon this evidence, therefore, was justified in finding that the letter of November 18, 1960, was ineffective for the purpose of exercising the option.

The next attempt to exercise the option was by letter to defendant dated January 3, 1961, from John Bouthilet, again ostensibly acting for Shuster, which letter improperly described the property on which plaintiff intended to exercise option.[6] Shuster did not have an option on the land so described at that time, and this is not disputed. Whether the letter of January 3 constituted a tender of performance by the optionee is a question of fact. Ferch v. Hiller, 209 Minn. 124, 295 N. W. 504. Both the lots described and the lots upon which option was held on January 3 were described in the agreement itself. To be effectual, however, election by an optionee to exercise the option must be unequivocal, Minar v. Skoog, 235 Minn. 262, 50 N. W. (2d) 300, unambiguous, Downer v. Buehrle, 90 Cal. App. (2d) 719, 203 P. (2d) 795; Master Laboratories, Inc. v. Chesnut, 154 Neb. 749, 49 N. W. (2d) 693, and according to the terms of the option. Minar v. Skoog, *supra*. The finding by the court that the letter of January 3 was insufficient to exercise the option is accordingly supported by the evidence.[7]

---

[5]It is the general rule that the subject matter of an option contract is not divisible unless the option agreement expressly provides otherwise. James, Option Contracts, § 822.

[6]As explained above, Shuster, Inc., had relinquished an option on the property described in the letter in consideration of obtaining an option on the property which was the subject of the September agreement.

[7]See, generally, James, Option Contracts, § 821.

The last attempt to exercise the option was by the letter dated January 17, 1961, from Mr. Bouthilet to Mr. Vogel. This letter stated that Mr. Shuster intended "to exercise the Option on *all* of the lots covered, including those which had basements." Reference in this letter to "those which had basements" referred to the lots which Mr. Bouthilet had previously been advised by Vogel were not available because they had been deeded to grantees designated by the lien claimants. The evidence also shows that the liens on these lots came into existence prior to the making of the option agreement, as a result of Shuster's failure to pay for improvements it had ordered to be made on the lots. Therefore, it must be concluded that Shuster had knowledge of the status of these lots at the time Mr. Shuster spoke to Mr. Bouthilet prior to the drafting of the letter of January 17, 1961. Furthermore, Dalton had notice prior to receipt of that letter that Shuster had been placed in bankruptcy by a creditors' petition on January 9, 1961.

Considering first the effect Dalton's knowledge of the bankruptcy petition prior to receipt of the letter of January 17, 1961, had upon the status of the option contract between Dalton and Shuster, that knowledge did constitute notice and warning to Dalton that it would deal with anyone other than the trustee in bankruptcy at its peril. Bankruptcy Act, § 70, subd. (d) (3), 11 USCA, § 110, subd. (d) (3); Kohn v. Myers (2 Cir.) 266 F. (2d) 353; In re Engram (M. D. Ga.) 156 F. Supp. 342, affirmed (5 Cir.) 249 F. (2d) 441, certiorari denied, 356 U. S. 901, 78 S. Ct. 561, 2 L. ed. (2d) 580; In re Maddux (E. D. Tenn.) 94 F. Supp. 134, affirmed (6 Cir.) 185 F. (2d) 480. While it is unnecessary for us to decide if the petition in bankruptcy constituted a breach of the option agreement by Shuster (In re Robertson [W. D. Ark.] 41 F. Supp. 665), it was justification for Dalton to refuse to accept an election to exercise the option by Shuster unless made by the trustee in bankruptcy.[8] There being no such election after appoint-

---

[8]For a general discussion of the effect of bankruptcy on an executory contract, see Stern v. Mayer, 166 Minn. 346, 207 N. W. 737, 46 A. L. R. 1167; Peterson v. Johnson Nut Co. 204 Minn. 300, 283 N. W. 561. See, also, Minneapolis Baseball Co. v. City Bank, 74 Minn. 98, 76 N. W. 1024;

ment of a trustee, the evidence sustains a finding that the letter of January 17 did not constitute a valid and bona fide exercise of the option agreement.

Affirmed.

Wardrop, *Prospective Inability in the Law of Contracts,* 20 Minn. L. Rev. 380, 389; Note, 1 Minn. L. Rev. 163, 168; Note, 12 Minn. L. Rev. 60.

The differences between anticipatory breach and insolvency or bankruptcy are discussed in Restatement, Contracts, § 324, *comment a.*