**STATE BANK OF ROSE CREEK,**
**Respondent,**

v.

**FIRST BANK OF AUSTIN,**
**Appellant.**

No. 81–1054.

Supreme Court of Minnesota.

June 18, 1982.

Alderson, Ondov, Leonard & Sween, Austin, Dorsey, Windhorst, Hannaford, Whitney & Halladay, J. Jackson and Joseph H. Anderson, Minneapolis, for appellant.

Baudler, Baudler & Maus and Robert M. Maus, Austin, for respondent.

OTIS, Justice.

This case involves competing claims to five non-negotiable certificates of deposit issued by Appellant First Bank of Austin (First Austin). First Austin appeals from the judgment of the district court, finding that its right to set-off was subject to a perfected security interest established by the State Bank of Rose Creek under Article 9 of the Uniform Commercial Code.

Between January and August of 1980 First Austin made a number of loans to Northland Door and Supply Company, Inc. The loans were guaranteed by Mitchell B. and Susan J. Christiansen up to the amount of $190,000.00. Mitchell Christiansen signed a total of seven promissory notes on behalf of Northland, some representing a renewal or consolidation of previous loans. On March 20, 1980, Christiansen signed a note for $99,325.26. An installment payment of $2,687.00 was due on April 10, 1980.

Also on March 20, 1980, First Austin issued five non-negotiable certificates of deposit totalling $4,602.67 to the Christiansens. By the terms of a signature card signed in connection with the purchase of the certificates the Christiansens granted First Austin a right to set-off against any of their funds in the bank.

Northland Door & Supply Co. failed to make the April 10, 1980 installment payment and therefore the loan was in default as of that date. First Austin did not exercise its right to set-off and subsequently made additional loans to Northland.

On April 16, 1980, State Bank of Rose Creek loaned Mitchell Christiansen $4,500.00. Christiansen signed an "assignment of savings account" and Rose Creek took possession of the five certificates. Christiansen did not endorse the certificates nor did either party notify First Austin of the assignment.

On May 31, 1980, when the loan from Rose Creek came due, the Christiansens defaulted. Two and a half months later, on August 13, 1980, Rose Creek sent notice to First Austin of the assignment of the certificates. The following day a representative of Rose Creek called First Austin to inquire about any attachments or assignments which might be on record against the certificates. The person with whom he spoke reported that there were no assignments or attachments but made no mention of First Austin's right to set-off.

Rose Creek attempted to redeem the certificates on October 15, 1980, but First Austin refused to acknowledge their claim asserting its right to set-off against the certificates. First Austin exercised that right two months later, on December 17, 1980.

Minnesota has recognized the rule permitting a bank to set-off a depositor's debt against his funds on deposit. *Nietzel v. Farmers & Merchants State Bank*, 307 Minn. 147, 238 N.W.2d 437 (1976). First Austin had a valid right to set-off as of the time of the default on the installment payment due on April 10, 1980, six days before the Christiansens pledged the certificates as collateral for the loan from Rose Creek. Under Minn.Stat. § 540.03 (1980) any assignment of the certificates would be subject to the right to set-off acquired before notice of such an assignment. *See, e.g., Kastner v. Dalton Development, Inc.*, 265 Minn. 511, 122 N.W.2d 183 (1963); *Kaw Valley State Bank & Trust v. Commercial Bank*, 567 S.W.2d 710 (Mo.App.1978). Respondent contends, however, that it has a perfected security interest in the certificates under Article 9 of the Uniform Commercial Code and that the provisions of

Minn.Stat. § 336.9–201 (1980), would result in Rose Creek's interest prevailing over First Austin's right to set-off. Appellant does not deny that Rose Creek had a security interest but argues that section 336.9–201 is not applicable.

The trial court held that the bank claiming a right of set-off was in the position of an unsecured general creditor and that by operation of section 336.9–201 a secured party would have a superior interest in the certificates. Accordingly the trial court granted judgment for State Bank of Rose Creek. We reverse.

 Both parties have valid claims to the certificates in question. Resolution of the dispute requires that this court determine what effect Minn.Stat. § 336.9–104(i) (1980), stating that Article 9 does not apply "to any right of set-off," has on the applicability of the Article 9 priority provisions.

Two views have been taken as to the meaning of section 336.9–104(i). The narrow view is that the section means simply that a right of set-off may exist in a creditor who does not comply with Article 9 security and filing requirements. *Citizens National Bank v. Mid-States Development Co.*, 380 N.E.2d 1243 (Ind.App.1978), *Associates Discount Corp. v. Fidelity Union Trust Co.*, 111 N.J.Super. 353, 268 A.2d 330 (1970). Comments by Professor Gilmore, a principle reporter of Article 9, are cited in support of this view:

> This exclusion [section 9–104(i)] is an apt example of the absurdities which result when draftsmen attempt to appease critics by putting into a statute something that is not in any sense wicked but is hopelessly irrelevant. Of course a right of set-off is not a security interest and has never been confused with one: the statute might as appropriately exclude fan-dancing. A bank's right of set-off against a depositor's account is often loosely referred to as a "banker's lien," but the "lien" usage has never led anyone to think that the bank held a security interest in the bank account. Banking groups were, however, concerned lest someone, someday, might think that a

> bank's right of set-off, because it was called a lien, was a security interest.

1 G. Gilmore, *Security Interests in Personal Property* 315–6 (1965).

Other courts and commentators have taken a broader view of the set-off exclusion, arguing that the provision takes all situations dealing with set-offs out of the ambit of Article 9, making the priority provisions inapplicable as well. *See, e.g., First National Bank v. Lone Star Life Insurance Co.*, 529 S.W.2d 67 (Tex.1975); Skilton, *The Secured Party's Rights in a Debtor's Bank Account Under Article 9 of the Uniform Commercial Code*, 1977 S.Ill. U.L.J. 120, 201–6. The cases relying on Gilmore's commentary regarding the exclusion have been criticized for extending his rationale for the exclusion language beyond its meaning. 1 P. Coogan, W. Hogan & D. Vagts, *Secured Transactions Under the Uniform Commercial Code* § 5A.15(2) (1981).

> Where the drafters have sought to limit other 9–104 exclusions so as to leave the Code's priority provisions in control they have done so expressly, as with liens for services and materials, and bank accounts and insurance proceeds as proceeds of collateral. Moreover, the courts have held that the 9–104(b) exclusion of landlord's liens operates to exclude the issue of their priority *vis a vis* a security interest from Article 9. Comment 8 to 9–104 indicates that set-offs are not covered because they do not serve as commercial collateral; this basis for the exclusion would extend to priority disputes.

*Id.* at 5A–93 (footnotes omitted). As these authors further point out, if the language was included because bankers feared that set-offs would be misconstrued as security interests, it is reasonable to suppose that the language was intended to exclude set-offs from operation of the priority provisions to insure that priority disputes would be settled by non-code law.

We are persuaded by the reasoning of those courts and commentators holding that non-code law should apply to priority disputes when one party asserts a right to set-off against a nonnegotiable instrument.

At the time the Christiansens pledged the certificates of deposit as collateral the certificates were already subject to a right of set-off. Because they were non-negotiable instruments Rose Creek could not take them as holder in due course, or even as a holder, and the Christiansens could only transfer such interest as they had. The wording of section 336.9–104(i) is clear insofar as it expresses an intent to exclude set-offs from coverage of Article 9 security and filing requirements. We believe it must also be read as excluding set-offs from the priority provisions. Accordingly we reverse the judgment of the district court.

KELLEY, J., took no part in the consideration or decision of this case.