427 So.2d 968 (1983)
BANK OF CRYSTAL SPRINGS, Mississippi
v.
FIRST NATIONAL BANK OF JACKSON, Mississippi.
No. 53986.
Supreme Court of Mississippi.
March 2, 1983.
*969 Moore, Royals & Taylor, Robert H. Taylor, Jr., Jackson, for appellant.
Thompson, Alexander & Crews, Marian F. Dulaney, Jackson, for appellee.
Before PATTERSON, C.J., and ROY NOBLE LEE and PRATHER, JJ.
PATTERSON, Chief Justice, for the Court:
The Bank of Crystal Springs, appellant, filed suit in the Circuit Court of Hinds County against First National Bank of Jackson, appellee, to recover $15,020.94 alleged due by virtue of a certificate of deposit drawn on appellee. The case was tried without a jury upon a comprehensive stipulation of facts and the testimony of four witnesses. The trial court found for the First National Bank and the Bank of Crystal Springs appeals.
The issue presented is whether appellee was entitled to a set-off against the claim of appellant amounts due appellee from the common debtor, James E. McCuller, by virtue of Miss. Code Ann. § 75-13-1 (1972).
James E. McCuller, prior to this controversy, had borrowed $20,000.00 from the appellee. To secure the payment of this note, McCuller assigned and delivered to appellee a certificate of deposit, in the face amount of $15,020.94, which had previously been issued to him by the appellee. The note was renewed on several occasions and secured by renewals of the certificate of deposit.
During February 1980, the First National Bank, in renewal of the certificate of deposit, issued McCuller Certificate of Deposit No. 34869, dated January 17, 1980, which is the instrument upon which appellant now seeks recovery. Although appellee intended to hold this certificate as security for McCuller's $20,000 note, through inadvertence and oversight, the original was delivered to McCuller. Thereafter, on or about March 10, 1980, appellee discovered the error and requested McCuller to return the certificate. McCuller did not return the certificate and appellee purported to cancel and void it and issued Certificate of Deposit No. 39498 in replacement as security for repayment of the above mentioned indebtedness.
Meanwhile McCuller, aware that the certificate was not intended for his possession, executed a promissory note and security agreement on February 26, 1980, in favor of appellant, the Bank of Crystal Springs, for the sum of $27,139.78. Under their security agreement McCuller delivered to appellant Certificate of Deposit No. 34869.
The testimony established that appellant mailed appellee copies of the assignment and certificate of deposit on February 26, 1980, with a cover letter stating in part, "Please acknowledge and return to us." The assignment and letter apparently never reached the First National Bank, or at least there was no testimony that appellee received it.
McCuller subsequently defaulted on his promissory notes with both banks. After default, in an attempt to protect itself through its security instrument, appellant presented Certificate of Deposit No. 34869 to appellee for payment. Appellee refused to pay appellant the funds represented by the certificate.
Both parties agree that the certificate upon which this action is brought was nonnegotiable,[1] therefore appellant was not a *970 holder in due course.[2] Since appellant does not have the status of a holder in due course, the appellee asserts appellant's rights are those permitted by Miss. Code Ann. § 75-3-306 (1972), which states in part:
Unless he has the rights of a holder in due course any person takes the instrument subject to
(a) all valid claims to it on the part of any person; and
(b) all defenses of any party which would be available in an action on a simple contract; and
Since the transaction between appellant and McCuller was held to be merely an assignment of a non-negotiable instrument, the trial court held Miss. Code Ann. § 75-13-1[3] gave appellee a right of set-off. This section permits a defendant, in a suit on a non-negotiable instrument to assert against the assignee-plaintiff, certain defenses, including all set-offs, which defendant could have asserted against the assignor. The statute requires notice of such assignment before the right to set-off is foreclosed.
The only issue is whether the First National Bank had received notice of the assignment so there was no right of set-off remaining with it. The First National Bank agrees that if notice of the assignment had been received they would not be entitled to set-off McCuller's indebtedness because this right matured subsequent to the mailing of the notice of assignment by the appellant.
As observed § 75-13-1 permits a right of set-off "previous to notice of assignment." Although not defined in the above section Miss. Code Ann. § 75-1-201(25) (1972), defines notice as:
A person has "notice" of a fact when
(a) he has actual knowledge of it; or
(b) he has received a notice or notification of it; or
(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.
To establish that appellee received notice, the appellant relies on the presumption that a correctly addressed letter, properly placed with the United States Postal Service with correct postage is presumed to have been delivered to the addressee. However, the appellee contends such presumption may be rebutted by evidence that the item mailed was not received. Young v. Westphalen & Co., 111 Miss. 765, 766, 72 So. 193, 194 (1916).
The appellee offered Miriam Jones as a witness, who was in charge of the bank *971 department engaged with certificates of deposits, to rebut the presumption of the letter's receipt. She testified she was unable to locate any copy of notice of the assignment to the Crystal Springs Bank after a thorough search of the records in her department. Harris Collier, Vice President of First National Bank, testified that he caused a similar search to be conducted to no avail. The appellant's inability to produce any acknowledgement from the First National Bank as it had requested corroborates to an extent appellee's contention that no such letter was received. The trial court found from the evidence that the presumption of receipt was rebutted and overcome by the testimony of the First National Bank. We are unable to say that this was manifest error. International Harvester v. Peoples Bank & Trust, 402 So.2d 856 (Miss. 1981); Transamerica Ins. Co. v. Bank of Mantee, 241 So.2d 822 (Miss. 1970).
The appellant further contends the right to the funds represented by the certificate of deposit should not be determined by § 75-13-1 but rather in accordance with Miss. Code Ann. § 75-9-101 et seq. (1972). In support of this the appellant contends it took possession of the certificate as a security for the repayment of McCuller's indebtedness, and because the certificate of deposit is by definition [§ 75-9-105(1)(i) (1972)] an instrument and the only way to perfect its interest therein was by taking possession of it [§ 75-9-304(1) (1972)], which admittedly was done, it has priority to the certificate and its proceeds over the First National Bank.
Appellant cites in support of the above position the First Nat'l Bank of Grand Prairie v. Lone Star Life Ins. Co., 524 S.W.2d 525 (Tex.Civ.App. 1975). There the pledgee of a non-negotiable certificate of deposit brought suit against the issuing bank following default by the debtor. The issuing bank declined to pay the certificate to the pledgee because the debtor was in default to them, thereby giving it a right of set-off. The court held a non-negotiable certificate of deposit was a proper subject for a pledge under Article 9 of their code and gave priority to the pledgee, thereby impairing the issuing bank's right of set-off. However, the Supreme Court of Texas, although refusing the Bank's application for writ of error, overruled the intermediate court on its ruling that no subsequent claim or set-off could impair the pledgee's perfected security interest. First Nat'l Bank of Grand Prairie v. Lone Star Life Ins. Co., 529 S.W.2d 67 (Tex. 1975). We therefore think appellant's contention in this regard is without merit.
We are of the opinion the exclusion from Article 9 protection means that the claimant to a right of set-off is not precluded from this right merely because another claimant to the security has perfected its interest in the security by taking possession of it. We again state the right of set-off is separate from the priority provisions of Article 9. We are supported in this viewpoint by State Bank of Rose Creek v. First State Bank, 320 N.W.2d 723 (Minn. 1982) and Citizens Nat'l Bank of Orlando v. Bornstein, 374 So.2d 6 (Fla. 1979).
We emphasize that the certificate of deposit and the funds represented by it are independent legal entities. Appellant's perfected security interest is in the certificate of deposit, an instrument in U.C.C. parlance. Appellee has exercised its right of setoff against the funds, not the certificate.
Upon McCuller's default, appellee's security interest in the certificate of deposit ripened into ownership. Because appellant does not have holder in due course status, as explained above, appellant has stepped into McCuller's shoes, which is to say that appellant now holds the certificate of deposit subject to any defenses of appellee. As explained elsewhere, these "defenses" include appellee's right of setoff.
The appellant finally argues that it has long been the rule in this state that where one of two innocent parties must suffer, he who has caused the loss must bear it. Davis v. Lee, 26 Miss. 505 (1853). Although conceding that McCuller was primarily responsible for this litigation by committing a fraud upon both banks, appellant nevertheless *972 contends McCuller could not have assigned the certificate to it had appellee not been negligent in allowing McCuller to gain access to it.
The appellee argues the Crystal Springs Bank was in the better position at the time it came into possession of the certificate to determine whether it was subject to any claims of the issuing bank and failed to do so. Therefore, it contends the appellant is not an "innocent party" for whom the equity rule applies.
We are of the opinion equitable considerations cannot prevail when in conflict with positive dictates of law. Griffith, Mississippi Chancery Practice, § 40 (2d ed. 1950). The statute relied upon by the trial court, § 75-13-1, clearly states the appellee had a right of set-off prior to receiving notice from appellant of the assignment of the non-negotiable instrument. Therefore, we cannot extend the rights of the Crystal Springs Bank, as assignee, beyond the mandates of this statute. Dulion v. Harkness, 80 Miss. 8, 31 So. 416 (1902).
For the reasons stated we find no error of the trial court and the cause is affirmed.
AFFIRMED.
WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
DAN M. LEE, J., takes no part.
NOTES
[1] Miss. Code Ann. § 75-3-104(1) (1972), provides the requirements for negotiability within Article 3 as follows:

Any writing to be a negotiable instrument within this chapter must (a) be signed by the maker or drawer; and (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer. (Emphasis added).
Miss. Code Ann. § 75-3-805 (1972), describes the non-negotiable instrument covered by Article 3 as follows:
This chapter applies to any instrument whose terms do not preclude transfer and which is otherwise negotiable within this chapter but which is not payable to order or to bearer, except that there can be no holder in due course of such an instrument.
Certificate of Deposit # 34869 was not made payable to order or bearer and therefore non-negotiable.
[2] Miss. Code Ann. § 75-3-302(1) (1972), sets out the requirements that must be met for one to be a holder in due course:

A holder in due course is a holder who takes the [negotiable] instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.
[3] Any note, or other writing which may be assigned under any of the provisions of Chapter 3 of the Uniform Commercial Code shall, when so assigned in the manner therein provided, carry with the assignment for the benefit of the assignee all liens and other securities securing the same, and the holder may fully enforce the said benefit in any proper proceeding in law or in equity. A claim for the purchase money of land, or any other claim, secured by a legal or equitable lien in or on realty, may be assigned in writing and thereupon have the full benefit of this section. Provided, however, as to all promissory notes, and other writings for the payment of money or other thing, except such notes or writings that are payable to order or bearer, when assigned, the assignee or indorsee of such promissory notes or other writings not payable to order or bearer, may maintain such action thereon, in his own name, as the assignor or indorser could have maintained. In all actions on such assigned promissory notes not payable to order or bearer, bill of exchange or other writing, for the payment of money or other thing not payable to order or bearer, the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts and setoffs made, had or possessed against the same, previous to notice of assignment in the same manner as though the suit had been brought by the payee. The assignee or indorsee of any such instrument not payable to order or bearer may maintain an action against the person, or persons, who may have indorsed the same as in case on inland bills of exchange. (Emphasis added).