747 P.2d 1225

The **VALLEY NATIONAL BANK OF ARIZONA, a national banking association, Plaintiff–Appellee,**

v.

**COTTON GROWERS HAIL INSURANCE INC., an Arizona corporation; and the Continental Insurance Company, a New York corporation, Defendants–Appellants.**

**No. 1 CA–CIV 9183.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 15, 1987.

Snell & Wilmer by Peter J. Rathwell, Eileen J. Moore, Phoenix, for plaintiff-appellee.

Robbins & Green, P.A. by William P. Hovell, Robert H. Green, Mark W. Romney, Phoenix, for defendants-appellants.

## OPINION

JACOBSON, Judge.

This appeal presents the question, under the Uniform Commercial Code, of whether a bank holding a secured interest in growing crops is entitled to proceeds of insurance covering that crop as against the insurer of the crop, who has not received a premium for the insurance.

The pertinent facts are not in dispute. In April, 1984, appellant, Continental Insurance Company, issued a cotton hail insurance policy through its broker, Cotton Growers' Hail Insurance, Inc., (hereinafter collectively referred to as appellants) to Paloma Ranch Development Corp. covering its 1984 cotton crop. The policy was to take effect immediately, although the $501,147.00 premium was not due until August 31, 1984. The appellants contend that this deferred premium payment plan was part of an industry custom which allowed the farmer to obtain insurance at the start of the crop growing season, but deferred payment of the premium until the crop was harvested and sold, at which time the farmer would be in a more liquid cash situation. According to appellants, this custom adjusted losses during the growing season by allowing the insurer to offset any losses against premiums owed.

Appellee, Valley National Bank, financed Paloma Ranch's cotton crop. On February

1, 1984, the bank and Paloma Ranch entered into a security agreement covering the cotton crop and "the proceeds (including, without limitation, proceeds under insurance policies....) of farm products." The bank had previously recorded a financing statement, dated May 27, 1983, covering Paloma Ranch's farm products, crops and their proceeds. The bank was a loss payee under the Continental cotton hail policy.

On July 27, 1984, a hailstorm damaged the Paloma Ranch cotton crop. Cotton Growers adjusted the loss and determined that damages in the amount of $300,277 were suffered by Paloma Ranch. Pursuant to the alleged industry custom and with Paloma Ranch's consent, Cotton Growers credited the $300,277 loss against the $501,-147 due on the premium, leaving a balance due on the premium of $200,820.

Paloma Ranch did not pay the balance due on the premium and it defaulted on its obligation owed the bank. Upon default, the bank demanded that the appellants pay to it the $300,277 loss under the hail insurance policy, contending that it constituted proceeds of the Paloma Ranch crop in which it had a security interest. The appellants refused, contending they were entitled "to an offset in the amount of the loss for unpaid premium."

This litigation ensued. The trial court granted the bank's motion for summary judgment, holding:

> The insurance proceeds payable to Paloma Ranch as a result of hail damage to its cotton crop are proceeds within the meaning of Arizona Commercial Code A.R.S. § 44-3127(A) [now A.R.S. § 47-9306(A)] in which [the bank] had a perfected security interest and to which [appellants], as unsecured creditors hold a subordinate claim.

This appeal followed in which the appellants contend:

(1) That the failure of Paloma Ranch to pay the premium on the policy excused appellants' obligation to pay the loss.

(2) That the appellants' right to offset its obligation to pay against the insureds' indebtedness for unpaid premiums was superior to the bank's secured interest; and

(3) That appellants had a "pledge interest" in the loss payable that was superior to the bank's interest.

## The Effect of Paloma Ranches' Failure to Pay Premiums

Appellants first argue that their obligation to pay any loss under the policy was subject to a condition precedent—the payment of the insurance premium. This argument is premised upon the previously described "industry custom" and the following language in the policy:

> "*AGREEMENT TO INSURE:* We will provide the insurance described in this policy *in return for* the premium and compliance with all applicable provisions." (Emphasis Added.)

Although appellants in this case attempt to apply the condition precedent argument to its obligation to pay losses under the policy, they concede that during the entire period of the crop growing season coverage against hail damage was provided even in absence of premium payment. If, therefore, coverage is provided under appellants' theory, does the contract language make payment of the premium a condition precedent to the *payment of a loss* under the coverage provided? We hold it does not.

As a general rule, a contractual provision shall not be construed as a condition precedent unless the language of the provision plainly and unambiguously requires that construction. *Watson Const. Company v. Reppel Steel & Supply*, 123 Ariz. 138, 598 P.2d 116 (App.1979). In this case the language that the appellants will provide insurance "in return for the premium" merely defines the insured's obligation to provide coverage in the first instance and sets forth the consideration for doing so. It wholly fails to inform anyone, let alone do so "plainly and unambiguously", that coverage will be afforded, but accruing payments which are in an amount less than the premium due will be withheld. We therefore reject appellants' contention

that the contract language creates a condition precedent.

Likewise, assuming that an industry custom exists which would make "payment" as compared to "coverage" subject to premiums due, we reject that such a custom is binding upon the bank. Custom may not be used to prove the meaning of words and phrases unless all parties are chargeable with knowledge of the custom. *Sam Levitz Furniture Co. v. Safeway Stores, Inc.*, 10 Ariz.App. 225, n. 4 at 228, 457 P.2d 938, n. 4 at 941. There is no evidence that the bank, as a loss payee under the policy, was aware that the insured's obligation to pay a loss was conditioned upon a custom between farmers and insurers to allow coverage but withhold payments for losses in amounts less than the premiums due. The evidence is undisputed that insofar as the bank was concerned, the appellants had simply issued a policy providing present coverage on credit. No conditions precedent to coverage or payment are presented under these facts.

We next deal with appellants' argument that the bank's "security interest never attached to the potential loss payable because Paloma Ranch did not [have rights in] the loss payable." While this argument is made in connection with the argument on conditions precedent, an analysis of its validity bears upon the set-off argument also advanced by appellants.

Of course, the argument depends upon the legal conclusion that Paloma Ranch had no interest in the proceeds from the hail damage at the time the loss occurred. In our opinion, that legal conclusion is not supportable. Under its agreement with appellants, Paloma Ranch was afforded coverage for hail damage during the entire crop growing season. Admittedly, its right to collect on that coverage was subject to an accounting between itself and the appellants for premiums due. But, Paloma Ranch had at least a contingency interest in the proceeds of the insurance at the time the loss occurred. Is such a contingent interest in the debtor sufficient to allow an interest to attach at the time the interest accrues?

In our opinion it is. A.R.S. § 47-9203 provides in part that

A security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

\* \* \* \* \* \*

3. The debtor has rights in the collateral.

The nature of the "rights" that the debtor must possess are not absolute, but may be contingent as is illustrated by *First National Bank of Arizona v. Carabajal*, 132 Ariz. 263, 645 P.2d 778 (1982). In that case, a cash seller delivered a van to its buyer but retained possession of the certificates of title. Without payment and without evidence of title, the buyer sold the van to a third party, took back a security interest and assigned that security interest to a bank. Against the contention that the buyer did not have sufficient rights in the collateral to allow the bank's interest to attach, the Arizona Supreme Court held:

When [the seller] delivered the van without a written agreement signed by the [buyer], [the buyer] obtained sufficient "rights" and "power" to encumber the van, A.R.S. § 44-3116 [U.C.C. § 9-203], and therefore [the bank's] security interest attached.

It is clear that as between the buyer and seller in *Carbajal*, the buyer's rights were subordinate to those of the seller. However, the buyer had sufficient right in van before the seller again obtained possession, to grant superior rights to a secured creditor.

In the case here, Paloma Ranch at the time the loss occurred had the right to receive any insurance proceeds. This right may have been subject to a condition subsequent—that the premium be paid by August 31. However, this condition subsequent could not excuse appellant's obligation to pay on July 27. In our opinion, this contingent right of Paloma Ranch in the insurance proceeds was sufficient to allow the bank's security interest to attach. *See, Morton Booth Co. v. Tiara Furniture, Inc.*, 564 P.2d 210 (Okla.1977) (hold-

ing that any interest of a debtor more than mere naked possession is sufficient to allow a security interest to attach under U.C.C. § 9–203(1)(c)); *In re Country Green Ltd. Partnership,* 438 F.Supp. 693 (D.C.Va. 1977) (holding that delivery of collateral to construction site was sufficient to allow debtors's interest to attach, although final interest of the debtor was contingent upon compliance with the general contract).

We, therefore, hold that Paloma Ranch held a sufficient interest in the proceeds of the insurance at the time the loss occurred to allow the bank's security interest to attach.

### Priority Between Bank's Security Interest and Right to Set–OFf

■ Appellants' principal position on appeal is that their common law right to offset the loss payable under the cotton policy against the unpaid premiums owed by Paloma Ranch was legally superior to the bank's perfected security interest in the loss payable as proceeds of its collateral.

Appellants first reason that under A.R.S. § 47–9104(9) (U.C.C. § 9–104(i)) their right of set-off was unaffected by the bank's security interest, because the right of "set-off" is excluded from the coverage of Article 9:

This chapter does not apply:

\* \* \* \* \* \*

9. To any right of set-off. . . .

No Arizona decision of which we are aware has construed this subsection. The decisions from other jurisdictions are split concerning the meaning of its analog, U.C.C. § 9–104(i). *See* Annotation, *Effect of U.C. C. Article 9 Upon Conflict, as to Funds in Debtor's Bank Account, Between Secured Creditor and Bank Claiming Right of Set-off,* 3 A.L.R. 4th 998 (1981). A relatively static and uninfluential minority of decisions interprets U.C.C. § 9–104(i) to mean that the common law right of set-off is entirely unaffected by U.C.C. article 9, including its priority provisions as well as those governing the creation and perfection of security interests. *State Bank of Rose Creek v. First Bank of Austin,* 320 N.W. 2d 723 (Minn.1982) (rejecting majority view

as "too narrow" and listing reasons); *Bank of Crystal Springs v. First National Bank of Jackson,* 427 So.2d 968 (Miss.1983) (following earlier cases without stating reasoning); *First National Bank in Grand Prairie v. Lone Star Life Insurance Co.,* 529 S.W.2d 67 (Tex.1975), *disapproving in part* 524 S.W.2d 525 (Tex.Civ.App.1975) (rejecting majority position based on literal language of UCC § 9–104(i)). *See also* Skilton, *The Secured Party's Rights in a Debtor's Bank Account under Article 9 of the Uniform Commercial Code,* 1 So.Ill.L. J. 120, 201–05 (1977); Note, 9 Loyola U. of Ch.L.J. 454, 462–65 (1978).

An expanding majority, however, holds that U.C.C. § 9–104(i) means only that a creditor need not comply with the attachment and filing provisions of U.C.C. article 9 to enforce a common law right of set-off, and that § 9–104(i) does not exclude application of article 9's priority provisions in resolving conflicts between set-off claimants and secured creditors. *Griffin v. Continental American Life Insurance Co.,* 722 F.2d 671 (11th Cir.1984) (adopting and setting forth opinion of Georgia Supreme Court reported at 251 Ga. 412, 306 S.E.2d 285 (1983)); *First National Bank and Trust Co. of Oklahoma City v. Iowa Beef Processors, Inc.,* 626 F.2d 764 (10th Cir.1980); *Citizens National Bank of Whitley County v. Mid–States Development Company, Inc.,* 177 Ind.App. 548, 380 N.E.2d 1243, 3 A.L.R. 4th 987 (1978); *Coachmen Industries, Inc. v. Security Trust & Savings Bank of Shenandoah,* 329 N.W.2d 648 (Iowa 1983); *Southeast Financial Corp. v. National Bank of Detroit,* 145 Mich.App. 717, 377 N.W.2d 900 (1985); *Morris Plan Co. v. Broadway National Bank of Kansas City,* 598 S.W.2d 557 (Mo.App.1980); *Associated Discount Corp. v. Fidelity Union Trust Co.,* 111 N.J.Super. 353, 268 A.2d 330 (1970); *Insley Manufacturing Corp. v. Draper B & T,* 717 P.2d 1341 (Utah 1986). The majority position grew out of the following discussion of U.C.C. § 9–104(i) by Professor Gilmore, a principal reporter for article 9 of the Uniform Commercial Code, in I.G. Gil-

more, *Security Interests in Personal Property* (1965):

> This exclusion is an apt example of the absurdities which result when draftsmen attempt to appease critics by putting into a statute something that is not in any sense wicked but is hopelessly irrelevant. Of course a right of set-off is not a security interest and has never been confused with one: the statute might as appropriately exclude fan dancing. A bank's right of set-off against a depositor's account is loosely referred to as a "banker's lien," but the "lien" usage has never led anyone to think that the bank held a security interest in the bank account. Banking groups were, however, concerned lest someone, someday, might think that a bank's right of set-off, because it was called a lien, was a security interest. Hence the exclusion, which does no harm except to the dignity and self-respect of the draftsmen.

*Id.* at 315–16, quoted in *Citizens National Bank v. Mid–States Development Co.*, 177 Ind.App. at 555, 380 N.E.2d at 1247, 3 A.L.R. 4th at 993–94. As the Georgia Supreme Court in *Griffin* elaborated:

> Plainly banks need not comply with the requirement of Article Nine in order to *create* a right to set-off against their depositors. But given the narrow purpose of the set-off exclusion, we are unwilling to read it as removing commercial transactions or conflicts from the operation of the UCC whenever the *priority* of a set-off is involved.

722 F.2d 671, 673

In our opinion, the majority states the better position, especially in light of A.R.S. § 47–9306(D)(4)(a) (U.C.C. § 9–306(4)(d)(i)), which provides:

> In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:
>
> (d) In all cash and deposit accounts of the debtor, in which proceeds have been commingled with other funds, but

the perfected security interest under this paragraph (d) is:

> (i) subject to any right of set-off....

In the first place, this provision clearly refers to a *bank's* right to set-off deposits in its debtor's account. Additionally, only the majority interpretation of U.C.C. § 9–104(i), under which conflicts between secured parties and set-off claimants are resolved under the priority provisions of article 9, would accord any independent meaning to U.C.C. § 9–306(4)(d)(i). In contrast, under the minority view of § 9–104(i) all security interests would always be subject to any right of set-off, rendering § 9–306(4)(d)(i) entirely superfluous.

We leave the numerous remaining reasons supporting the majority interpretation of U.C.C. § 9–104(i) to a reading of *Insley Manufacturing* and the other decisions cited above. We agree with *Insley Manufacturing* that the reasoning in support of the majority position is "significantly more persuasive than that underlying the broad interpretation followed by the minority of courts." 717 P.2d 1341, 1345. We accordingly adopt it for Arizona and follow it in this case.

The consequence is that the bank prevails. The central priority provision of chapter 9 of Arizona's version of the Uniform Commercial Code is A.R.S. § 47–9201 (U.C.C. § 9–201), which provides in part:

> Except as otherwise provided by this title a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors.

As the *Griffin* court stated under similar facts,

> The effect of this section is to give the Article Nine secured party, upon a debtor's default, priority over "anyone, anywhere, anyhow" except as otherwise provided by the remaining Code priority rules. * * * There being nothing else in the Code to resolve the priority conflict ..., [§ 9–201] is controlling.

722 F.2d 671, 673 (Appendix). In this case the bank held a perfected security interest in the $300,277 loss payable under appellants' 1984 cotton policy as "proceeds" of

collateral, which attached at the time the loss was incurred. This interest must prevail over the appellant's rights as unsecured creditors to a set-off, under A.R.S. § 47–9201.

■ Appellants cite *Terra Western Corp. v. Berry & Co.*, 207 Neb. 28, 295 N.W.2d 693 (1980), which construed the Nebraska version of U.C.C. § 9–306, to contend that the insurance payable as a result of Paloma Ranch's cotton crop loss could not become "proceeds" within A.R.S. § 47–9306 until actually received by Paloma Ranch. Since Paloma Ranch never actually "received" any money, appellants argue, the bank's security interest never attached to the $300,277 loss award, and the bank accordingly had no claim for recovery against appellants.

We cannot agree. Contrary to appellants' assertion, Nebraska's version of U.C.C. § 9–306 construed by *Terra Western* is not just "slightly modified," at least as compared to Arizona's version of the same section. A.R.S. § 47–9306 provides in part:

A. "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. *Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement.* Money, checks, deposit accounts and the like are "cash proceeds". All other proceeds are "non-cash proceeds".

(Emphasis added.) The emphasized language, the meaning of which is clear on its face, is entirely absent from the Nebraska statute. *Terra Western* therefore cannot be viewed as persuasive authority for interpreting A.R.S. § 47–9306(A). Furthermore, the *Terra Western* holding has been specifically criticized as a minority position. In *Matter of Reda, Inc.*, 54 B.R. 871 (N.D. Ill., E.D.1985) the court acknowledged *Terra Western,* but said the better rule is that the "right to payment" under an insurance policy constitutes "proceeds" subject to Article 9 of the UCC. *See In re Mewes*, 56 B.R. 108 (D.S.D.1985) (bank had perfected security interest in undeposited insurance

draft as "proceeds" of collateral). We therefore find that the bank complied with all of the requirements of A.R.S. § 47–9203 (U.C.C. § 9–203) as of July 27, 1984. It had obtained a written security agreement and advanced funds to Paloma Ranch on April 17, 1984, and Paloma Ranch had, as we have previously held, an interest in the proceeds as of July 27, 1984. Thus, even under the minority position whereby Article 9 is not applicable to this case and common law priorities based on "first in time" control, we cannot agree that Cotton Growers' right to set-off antedated the attachment of the bank's security interest to the loss payable.

The only argument upon which appellants may succeed is that set-off is *always* superior to other interests, even secured interests under Article 9. Petitioner cites two cases to support this contention. The first, *State Bank of Rose Creek v. First Bank of Austin*, 320 N.W.2d 723 (Minn. 1982) does state this proposition. However, the case follows the minority position already discussed, which excludes set-off claims from even the priority provisions of Article 9. The case is therefore not persuasive. We similarly reject the applicability of *Bank of Crystal Springs v. First Nat'l. Bank of Jackson*, 427 So.2d 968 (Miss.1983) as that case did not involve a dispute between a set-off claimant and an Article 9 creditor, but rather a set-off claimant and an assignee of non-negotiable commercial paper. Thus, these cases have not convinced us of the invalidity of the majority rule, under which the bank, as a perfected secured creditor must win over appellants' unsecured right to set-off.

### *Applicability of Appellants' "Pledge" Argument*

■ Appellants lastly argue that they had a secured "pledge interest" in the loss payable under the 1984 cotton policy which dated from the signing of the insurance contract and thus had priority over VNB's security interest. In response, the bank objects to our consideration of this argument for the first time on appeal. Appellants reply that both sides "have been contesting all along whether the Appellants

have a security interest," and that this was "sufficient to fairly apprise the superior court of the pledge issue ... even though it was not fully developed before the superior court." We have reviewed the record, and cannot agree with this characterization. Appellants never argued in the trial court that they had *any* kind of security interest, whether based on a "pledge" or otherwise. Appellants likewise did not argue that there existed either an express or an implied agreement between appellants and Paloma Ranch to create or retain a security interest in any future loss payable under the cotton policy, and in fact, now allege that they held a pledge *despite* the absence of such an agreement. This is plainly not the law. *See Matter of OPM Leasing Services, Inc.,* 46 B.R. 661 (S.D.N.Y.1985) (security interest valid and enforceable only if there is evidence of intent to create or retain security interest). Indeed, appellants' new contention that they had a secured "pledge" interest in the loss payable is fundamentally inconsistent with their assertion before the trial court that their claim to the loss payable constituted a right of set-off. *See Rankin v. First National Bank of Fairhope,* 416 So.2d 738 (Ala. 1982) (right of set-off is in an unsecured transaction in which the depositer's funds are involuntarily withheld, not given as collateral for the loan). This court will not consider issues and theories not presented to the court below. *Sahf v. Lake Havasu City Association for the Retarded and Handicapped,* 150 Ariz. 50, 721 P.2d 1177 (App.1986); *Richter v. Dairy Queen of Southern Arizona, Inc.,* 131 Ariz. 595, 643 P.2d 508 (App.1982). We accordingly decline to consider the merits of appellants' "pledge" arguments.

Finally, we address some of appellants' policy arguments. Appellants recite at length, the background of cotton farming and insurance practices relating thereto, apparently to point out, that the practice of deferring premiums on crop insurance is designed to protect the farmer by allowing him to "avoid borrowing money for insurance at a time when substantial resources are needed to plant the crop." While this policy is laudable, we feel that appellants could have protected themselves. By checking the U.C.C. records, the bank's perfected security interest in the crops would have been apparent. Appellants could have advanced Paloma Ranch the money for the premium, themselves taking a security interest, in either separate and distinct collateral than that covered under the bank's financing statement, or insisting upon subordination by the bank. Appellants failure to do either of these alternatives was, in this case, fatal.

The judgment is affirmed.

The bank has requested an award of attorney's fees on appeal. We grant the request under A.R.S. § 12–341.01(A). The bank may establish the amount of its award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

CORCORAN, P.J., and BROOKS, J., concur.