633 So.2d 53 (1994)
The BANK OF WINTER PARK, Appellant,
v.
RESOLUTION TRUST CORPORATION, Appellee.
No. 92-3102.
District Court of Appeal of Florida, Fifth District.
February 11, 1994.
Houston E. Short, Frank L. Pohl and Sherri K. Dewitt of Graham, Clark, Pohl & Jones, Winter Park, for appellant.
J. Thomas Cardwell and Peter L. Pollock, Jr. of Akerman, Senterfitt & Eidson, P.A., Orlando, for amicus curiae.
Thomasina H. Williams of Mitchell, Williams & Clyne, P.A., Coral Gables, for appellee.
*54 GOSHORN, Judge.
The Bank of Winter Park (the Bank) timely appeals the trial court's final judgment awarding certificate of deposit (CD) proceeds in the amount of $124,750.58 to Resolution Trust Corporation, the receiver for American Pioneer Federal Savings Bank. We reverse.
In October 1989, the Bank loaned $300,000 to Richard Swann and two other officers of American Pioneer. Although the Bank agreed that the loan would be unsecured, the Bank insisted that Swann maintain a deposit account at the Bank. Consequently, Swann deposited $100,000 with the Bank, and the Bank issued a CD in that amount to Swann. The CD's provisions prohibited Swann from transferring the "certificate without first obtaining [the Bank's] written consent." The CD also contained a provision which granted the Bank certain set-off rights:
[Any depositor] who has the right to withdraw from this account agrees that [the Bank] may set-off any debt [the depositor] owe[s] [the Bank] now or later against the amount of money [the depositor] could withdraw from this account... . [The Bank] may exercise this right of set-off, without notice to [the depositor], any time [the depositor's] debt is in default.
Shortly after acquiring the CD, Swann pledged the CD to American Pioneer as collateral on a loan despite the CD's provision prohibiting transfer without the Bank's prior written consent. The Bank was not notified of and did not consent to this assignment.
In August 1990, after becoming concerned that Swann and the other American Pioneer officers would default on the $300,000 loan, Bank officials put an administrative hold on the CD in order to protect the Bank's interest. On October 2, 1990, the Bank sent Swann a letter notifying him that he was in default on the loan.
On October 3, 1990, a representative of American Pioneer informed the Bank that American Pioneer planned to redeem the CD when the CD matured on October 13, 1990. American Pioneer again contacted the Bank on October 10, 1990, at which time the Bank informed American Pioneer that the Bank was exercising its contractual right of set-off against the CD proceeds to partially satisfy Swann's $300,000 loan obligation to the Bank. In a letter dated October 11, 1990, American Pioneer's attorneys informed the Bank of Swann's assignment of the CD to American Pioneer.
On October 15, 1990, the Bank transferred the $100,000 from the CD to one of the Bank's accounts, applying the CD proceeds towards the $300,000 loan Swann and his fellow officers had taken out with the Bank. As the receiver of American Pioneer, the Resolution Trust Corporation (RTC) subsequently took possession of American Pioneer's assets and filed this lawsuit to recover the CD proceeds from the Bank.
In its findings of fact and conclusions of law entered after trial, the trial court expressly found that the Bank never consented to Swann's pledge of the CD to American Pioneer. Nevertheless, the trial court concluded that the perfected security interest held by RTC as the receiver of American Pioneer was superior to the Bank's set-off rights, and the court entered a final judgment awarding RTC the CD proceeds.
The parties agree that this case is governed by the Florida Supreme Court's opinion in Citizens National Bank of Orlando v. Bornstein, 374 So.2d 6 (Fla. 1979) (Bornstein II), in which the supreme court discussed the competing interests in a CD between a bank with set-off rights and a creditor with a perfected security interest.[1] Under the court's holding in Bornstein II, the non-negotiable CD in this case was an instrument as defined by section 679.105(1)(i), Florida Statutes (1991) (formerly section 679.105(1)(g)); accordingly, Swann's assignment to American Pioneer was "a transfer entitled to secured transaction treatment under article 9." Bornstein II, 374 So.2d at 9. We find, however, that the Bank was not prevented from asserting its set-off *55 rights against American Pioneer even though American Pioneer was "a secured party with a perfected security interest under article 9." Bornstein II, 374 So.2d at 10. The supreme court construed section 679.104(9), Florida Statutes (1973), which excludes any right of set-off from article 9 coverage, to mean that a bank need not comply with article 9's provisions to preserve "whatever set-off rights [it] may aptly demonstrate." Id.
Despite the supreme court's holding that a bank's right of set-off arises independently of the provisions of article 9, the federal district court apparently applied article 9's priority provisions because in Bornstein v. Citizens National Bank of Orlando, 606 F.2d 114 (5th Cir.1979) (Bornstein III), the fifth circuit affirmed the district court's award of the CD proceeds to the secured creditor. Bornstein III, 606 F.2d at 114-15. We acknowledge that as a general rule, under the Uniform Commercial Code (UCC), a secured creditor which has properly perfected its security interest by taking possession pursuant to article 9 prevails over all other creditors. Credit Alliance Corp. v. National Bank of Georgia, 718 F. Supp. 954, 957 (N.D.Ga. 1989); Valley Nat'l Bank of Arizona v. Cotton Growers Hail Ins. Inc., 155 Ariz. 526, 531, 747 P.2d 1225, 1230 (Ct.App. 1987). We further recognize that the United States Court of Appeals for the Eleventh Circuit has since interpreted Bornstein II to mean that article 9's priority provisions govern the present dispute. S.E.L. Maduro (Florida) Inc. v. Strachan Shipping Co., 800 F.2d 1572, 1576-77 (11th Cir.1986).
Contrary to the Eleventh Circuit's interpretation, however, a careful reading of the supreme court's opinion suggests that the court did not intend for the priority provisions of article 9 to apply to disputes involving a bank with set-off rights. In Bornstein II, our supreme court held that a bank's right of set-off does not arise under article 9 and that a bank is not prevented from asserting set-off rights against an article 9 secured creditor. One court has interpreted this holding to mean that "the right of set-off is separate from the priority provisions of Article 9." Bank of Crystal Springs v. First Nat'l Bank of Jackson, 427 So.2d 968, 971 (Miss. 1983) (citing Bornstein II). We agree with this interpretation. See also State Bank of Rose Creek v. First Bank of Austin, 320 N.W.2d 723, 725 (Minn. 1982) (non-code law applies to priority disputes when bank asserts right of set-off against non-negotiable instrument).
If our interpretation of Bornstein II is correct, the priority provisions of article 9 do not apply to such disputes and under existing case law, a bank will prevail if its right to set-off against a matured debt existed at the time it received notice of the assignment. United States Nat'l Bank of Galveston v. Madison Nat'l Bank, 355 F. Supp. 165, 170-71 (D.D.C. 1973), affirmed, 489 F.2d 1273 (D.C. Cir.1974); State Bank of Rose Creek, 320 N.W.2d at 724. Florida courts have employed a similar analysis in deciding priority disputes between a garnishee bank with set-off rights and a judgment garnishor. These cases hold that a garnishee bank prevails over a judgment garnishor where the garnishee bank's set-off rights accrued upon the depositor's default prior to the bank receiving service of the writ of garnishment. Coyle v. Pan Am. Bank of Miami, 377 So.2d 213 (Fla. 3d DCA 1979); Barsco, Inc. v. H.W.W., Inc., 346 So.2d 134 (Fla. 1st DCA 1977). This approach is consistent with general contract principles that "an assignee is subject to defenses and claims accruing before the obligor receives notification" of the assignment, including the right of set-off. First New England Fin. Corp. v. Woffard, 421 So.2d 590, 595 (Fla. 5th DCA 1982). See also National Bank of Galveston, 355 F. Supp. at 170.
Accordingly, we conclude that the defense of set-off was available to the Bank in this case if such rights accrued before the Bank received notification of Swann's assignment of the CD to American Pioneer. The Bank's right of set-off accrued by October 2, 1990, when the Bank declared Swann in default on the $300,000 loan. At this time, neither Swann nor American Pioneer had notified the Bank that Swann pledged the CD to American Pioneer. Under these circumstances, the Bank was entitled to exercise its accrued right of set-off on October 15, 1990.
*56 Even if our interpretation of Bornstein II is incorrect, we conclude that the Bank still should have prevailed below because the CD prohibited Swann from transferring or assigning the CD without first obtaining the Bank's written consent. We recognize, and RTC correctly points out, that the federal court in Bornstein III ruled in favor of the assignee/secured party despite the CD's provision prohibiting its assignment. See Bornstein III, 606 F.2d at 114-15. It is unclear, however, how the federal court reached this result. In Bornstein II, the supreme court specifically held that section 679.318(4), Florida Statutes (1973), does not operate to invalidate the CD's restrictions on assignment. Bornstein II, 374 So.2d at 11. Although the supreme court apparently concluded that the CD's provision restricting the CD's assignment was valid, the federal court inexplicably failed to give effect to the restrictions. Bornstein III, 606 F.2d at 115.
In fact, the supreme court noted that, in the event of an assignment, the bank's promise to pay would be conditioned upon its consent to the assignment. Bornstein II, 374 So.2d at 13. This statement is in keeping with the common-law rule that "a contractual provision against the assignment of the contract will usually be regarded as an effective restriction." Rafkind v. Simon, 402 So.2d 22, 23 (Fla. 3d DCA 1981). See also Texas Bank & Trust Co. v. Spur Sec. Bank, 705 S.W.2d 349, 353 (Tex. Ct. App. 1986) (secured creditor, although obtaining a perfected security interest in CD, takes assignment subject to CD's consent provision).
In this case, the trial court found that the Bank never consented to the assignment to American Pioneer. Given this finding, we conclude that the trial court erred in failing to give effect to the non-assignment provision and in awarding the CD proceeds to American Pioneer's receiver, RTC.
In conclusion, we hold that the Bank's interest in the CD was superior to that of RTC because the Bank's set-off rights accrued prior to the Bank receiving notice that Swann assigned the CD to American Pioneer and, alternatively, because American Pioneer took the assignment subject to the CD's provision requiring the Bank's prior written consent. Either ground mandates reversal. We therefore reverse the final judgment and remand this cause for proceedings consistent herewith.
REVERSED.
DAUKSCH and COBB, JJ., concur.
NOTES
[1] In Bornstein II, the supreme court did not decide the priority dispute because the court's role was limited to answering questions certified by the United States Court of Appeals for the Fifth Circuit. See Bornstein v. Citizens Nat'l Bank of Orlando, 564 F.2d 721 (5th Cir.1977) (Bornstein I).