**In the Matter of Guy B. OSBORN, Bankrupt.**

**No. 72–BK–808.**

United States District Court, N. D. New York.

Feb. 26, 1975.

**1138**

Warren V. Blasland, Costello, Cooney & Fearon, Syracuse, N. Y., for Trustee.

Sheldon G. Kall, Syracuse, N. Y., for Red Creek National Bank.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.*

On May 11, 1972, Guy B. Osborn filed his petition in bankruptcy in this Court and was thereupon adjudicated a bankrupt. The trustee in bankruptcy appeals from an order by Honorable Leon J. Marketos, Bankruptcy Judge, entered March 29, 1973 denying his application for an order directing Red Creek National Bank of Red Creek, New York ("the Bank") to turn over to the bankrupt's estate a 1964 Mack highway tractor ("the truck") that it had repossessed on or about March 11, 1972 pursuant to a claimed security interest, or to pay the fair market value of that vehicle.

▆ The Bank filed copies of a security agreement and financing statement (New York form UCC–1) covering this vehicle on or about October 26, 1971 with the New York Secretary of State at Albany, New York, and in the Cayuga County Clerk's Office at Auburn, New York. At that time, Osborn represented himself to be a resident of the hamlet of Martville, Town of Victory, Cayuga County. The Bankruptcy Judge has found that place was in fact his residence. There is evidence to support this finding, although the bankrupt did receive mail at his father-in-law's home in Oswego County, at an address he also used for his driver's license. Because of the marital difficulties which are the root of most bankruptcies, the bankrupt "would live out of the truck" and spend little time in Martville or Oswego County. The findings of our Bankruptcy Judge as to residence may not be disturbed by this Court on review unless clearly erroneous, which they are not. Rule 810, Bankruptcy Rules, 411 U.S. 1090.

▆ Accordingly, the Bank would have perfected a valid security interest on October 26, 1971 by filing as aforesaid, but for the provisions of § 9–103(4) of the New York Uniform Commercial Code, 62 ½–Pt. 3 McKinney's Cons. Laws, c. 38, which provides as follows:

> "(4) Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."

The record before the Bankruptcy Judge shows clearly that, using money borrowed from the Bank, the bankrupt purchased this second hand vehicle in Ohio, and acquired a clean certificate of title in Ohio on October 26, 1971. The security interest of the Bank was not noted on the title certificate as required by Ohio law. See Ohio Rev.Code § 4505.13 (Page 1973). The bankrupt registered the vehicle in Ohio using the title certificate and, in doing so, gave an Ohio address as his place of residence, believing that his truck leasing arrangements with a third party required registration of the vehicle in that state.

Although the Bank knew nothing of the Ohio registration and title certificate, nor of bankrupt's intention to register the vehicle there, and although the truck was garaged principally in New York, we think the learned Bankruptcy Judge erred as a matter of law in his conclusion that the Ohio certificate of title was "surplusage created by reason of the misconception of the bankrupt that he was required to have an Ohio registration", (Decision, p. 6) and that he failed to give effect to the clear provisions of § 9–103(4) of the Uniform Commercial Code.

The case presents a mirror, or reverse factual situation of that considered by Judge Brennan of this Court in In re

---

* Of the Southern District of New York, sitting by designation.

White, 266 F.Supp. 863 (N.D.N.Y.1967). In that case, a mobile home was sold in Virginia, a title state, and a security interest was perfected there by a notation on the title certificate. The mobile home was moved into New York, and the creditor did nothing further to perfect his interest. The District Court in holding that the law of Virginia governed the security interest quoted from the New York Annotations of § 9–103 of the Uniform Commercial Code:

" 'Subsection (4) is new and avoids the possible necessity of duplicating perfection in the case of vehicles subject to a certificate of title law requiring compliance therewith to perfect security interests. The certificate of title law requirements are adopted as the test for perfection.' ([62 ½ McKinney's Consol. Laws, Book 3] Page 345)." 266 F.Supp. at 865.

See also G. M. A. C. v. Whisnant, 387 F.2d 774 (5th Cir. 1968); In re Smith, 311 F.Supp. 900 (W.D.Va.1970), aff'd sub nom. Callaghan v. Commercial Credit Corp., 437 F.2d 898 (4th Cir. 1971); In re Friedman, 4 UCC Rep.Serv. 890 (D.Conn., Ref. Dec. 1967).

In accordance with § 9–103(4), we find that it is the law of Ohio that determines the existence of a perfected security interest, at least prior to the Bank's lawful repossession of the tractor in the State of New York. See In re Edwards, 6 UCC Rep.Serv. 1124 (E.D.Mich., Ref. Dec. 1969). Under the Ohio Certificate of Title Law, a security interest must be noted on the certificate of title. Ohio Rev.Code § 4505.04. Certificates of title are issued in triplicate and copies are retained by the clerk of the court of common pleas which issued the certificate and by the state registrar of motor vehicles. Ohio Rev.Code § 4505.08. The registration of title system contemplated by the Ohio Certificate of Title Law is designed to provide public notice of ownership and encumbrance in a manner similar to that contemplated by Article 9 of the Uniform Commercial Code as in effect in New York. See In re Davidoff, 351 F.Supp. 440 (S.D.N.Y.1972).

Ohio law is not entirely clear on the effect of the procurement of a clean certificate of title to cut off equities in instances where title may be traced to a thief or to one who has obtained clean title by fraud. See Commercial Credit Corp. v. Pottmeyer, 176 Ohio St. 1, 197 N.E.2d 343 (1964); Hardware Mutual Casualty Co. v. Gall, 15 Ohio St.2d 261, 240 N.E.2d 502 (1968); G. M. A. C. v. Birkett L. Williams Co., 17 Ohio Misc. 219, 243 N.E.2d 882 (C.P., Cuyahoga County 1969); Poland Chevrolet Co. v. Shelly Smith & Sons, 21 Ohio Misc. 30, 254 N.E.2d 728 (C.P., Richland County 1969). See also J. White & R. Summers, Uniform Commercial Code § 23–21, at 860 n. 210 (1972). The instant case does not involve theft or fraud.[1]

In proceedings before the Bankruptcy Judge, the President of the Bank testified that he knew that the truck was to be purchased in Ohio and that, prior to the time the Bank filed its financing statements in New York, he knew that the bankrupt had an invoice from an Ohio seller. (Decision, p. 3). The bankrupt did not attempt to deceive the Bank by procuring an Ohio title certificate under a false name or by altering the identification of the vehicle. The Bank assumed that the truck was to be

---

1. Likewise, the instant case is distinguishable from Associates Discount Corp. v. Colonial Finance Co., 88 Ohio App. 205, 98 N.E.2d 848 (1950). In that case, a valid security interest attached and was perfected in New York while the debtor had his truck in New York; thereafter, the truck was moved to Ohio where a clean certificate was obtained by fraud. The Ohio Court held that the New York security interest was perfected although it was not noted on the Ohio certificate of title. In the instant case, the tractor was not located in New York at the time the financing statements were filed and perfection could not be achieved through compliance with the New York U.C.C. The *Associates Discount* case is distinguishable also because in this case there has been no finding of fraud, only what appears to have been honest mistakes on the part of both parties.

registered in New York without inquiring further.[2] Under these circumstances, a *bona fide* encumbrancer for value without notice in Ohio could have acquired a valid title or priority against the Bank.

In this case, the Ohio title certificate was actually used to obtain Ohio license plates, pursuant to which the truck was operated. Perhaps the result would be different had the bankrupt brought the truck to New York immediately upon purchase and registered it here, treating the Ohio certificate as a nullity or, more likely, surrendering it here in connection with obtaining his New York registration. Then, the Ohio title certificate might be "surplusage." [3]

It appears that on or about March 11, 1972, two months prior to adjudication of bankruptcy, the tractor was repossessed by the Bank. Such repossession served to perfect the Bank's security interest as of that date. N.Y. U.C.C. § 9–305. See L. B. Smith, Inc. v. Foley, 341 F.Supp. 810 (W.D.N.Y.1972). This perfection does not relate back to the date of the ineffective filing of the financing statements in New York. The repossession of the truck by the Bank,

2. One commentator has observed that the correct interpretation of § 9–103(4) imposes a considerable burden on the secured creditor. He hypothesized the following circumstances:

"[A] debtor has three trucks, all of which operate in States A, B and C. (All the certificate of title acts qualify under subsection (4).) Now if the X Finance Company takes a security interest in the three trucks, at least the perfection (and perhaps the validity) of the security interest will be governed by a different law as to each truck. This is unfortunate, but there appears to be no way of avoiding the result under the subsection. The result means more complexity for the X Finance Company and more difficulty for creditors of the truck owner who may wish to find out which of his assets are encumbered. (The only thing the creditors of the truck owner can do under § 9–103(4) is to locate each truck and then find out (a) if it is covered by a certificate of title and (b) if the certificate of title act of the issuing state is of the type described in the subsection.) Subsection (4) was a last-minute addition to Article 9; it appears to have been imperfectly thought through and is clearly defective in its drafting." 1 G. Gilmore, Security Interests in Personal Property § 10.10, at 328 (1965).

3. Subsequent to the transactions here in issue, New York adopted the Uniform Motor Vehicle Certificate of Title Act. N. Y. Vehicle & Traffic Law § 2101 et seq., 62A McKinney's Consol.Laws, c. 71 (Supp.1974). This act does not apply to vehicles manufactured prior to July 1, 1972. N.Y.V. & T. Law § 2102(a)(10). This uniform legislation has been adopted also in Alabama, Connecticut, Maine, Massachusetts, Minnesota, New Hampshire, Rhode Island and Vermont. Under the new law, security interests in motor vehicles are perfected only if they are noted upon the certificate of title. N.Y.V. & T. Law §§ 2119, 2123. It is noteworthy that the Uniform Act has a provision that governs choice of law questions in circumstances analogous to those presented by this case:

"(c) If a vehicle is subject to a security interest when brought into this state, the validity of the security interest is determined by the law of the jurisdiction where the vehicle was when the security interest attached, subject to the following:

(1) If the parties understood at the time the security interest attached that the vehicle would be kept in this state and it was brought into this state within thirty days thereafter for purposes other than transportation through this state, the validity of the security interest in this state is determined by the law of this state."

N.Y.V. & T. Law § 2118(c)(1).

The new act supplants existing law which applies Article 9 of the U.C.C. to security interests in motor vehicles. N.Y.V. & T. Law § 2123. An alternative solution to the choice of law problems raised by the movement of vehicles which are the collateral in a secured transaction has been proposed by the National Conference of Commissioners on Uniform State Laws. With exceptions not material here, perfection of a security interest in goods subject to a certificate of title law would be governed by the law of the jurisdiction which issued the certificate of title, including that jurisdiction's conflict of laws rules, until four months after the removal of the goods from that jurisdiction, or "until the goods are registered in another jurisdiction." See § 9–103(2)(b), 1972 amendments proposed by the National Conference, published in "Selected Commercial Statutes," 1972 pamphlet, West Pub. Co. This proposal has not been adopted in New York.

pursuant to its previously unperfected security interest, constitutes "a transfer . . . of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt." 11 U. S.C. § 96(a). Whether such repossession in March constitutes a voidable preference, as alleged by the trustee, who asserts that the Bank had reasonable cause to believe the bankrupt was then insolvent, is an issue of fact which remains unresolved.

The order appealed from is reversed. The trustee is directed to file an appropriate complaint within 30 days, under Part VII of the Bankruptcy Rules, pursuant to § 60(b) of the Bankruptcy Act, 11 U.S.C. § 96(b), to set aside the claimed preference.

So ordered.