**In re STAR SAFETY, INC., Debtor.**

**Bankruptcy No. 83 05059.**

United States Bankruptcy Court,
D. North Dakota.

April 9, 1984.

Phillip D. Armstrong, Minot, N.D., for trustee.

Mervin Nordeng, Fargo, N.D., Russel G. Robinson, Minot, N.D., for GMAC.

William Westphal, U.S. Trustee.

### MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

At issue is the relative interests of General Motors Acceptance Corporation (GMAC) and the Trustee in insurance proceeds derived from damages to the Debtor's truck which was repossessed and sold by GMAC. On November 29, 1983, GMAC moved this Court for an order requiring the Trustee to pay over to it the sum of $5,638.90 representing payments received from United States Fidelity and Guaranty Company in consequence of an insurance claim for repairs made to the truck. GMAC's action is in the nature of a reclamation. The Trustee resisted the motion asserting that GMAC had no interest in the insurance proceeds. The matter came on for hearing on January 10, 1984, with the Trustee appearing but no appearance being made by GMAC. The Court thereafter entered its Order denying GMAC's motion. GMAC then filed for relief from the Order under Rule 60(b). This request was granted, and a further hearing was held on March 12, 1984, with both parties present. Counsel were directed to file briefs and upon submission the Court agreed to reconsider its January 31, 1984, Order.

The facts are as follows: On December 18, 1981, the Debtor purchased and took possession of a 1982 GMAC pickup pursuant to a retail installment contract with the dealer, Jerry Harmon Motors, Inc. (Dealer). The contract was subsequently assigned to GMAC who duly perfected its security interest by noting itself as lienholder on the certificate of title which is the sole method

prescribed under North Dakota law for perfecting a security interest in a motor vehicle. The security interest granted to GMAC under the terms of the retail installment contract included proceeds of the property and further provided that the Debtor should keep the vehicle covered by physical damage insurance. While in possession of the Debtor, the pickup sustained damage and was taken back to the Dealer who in December of 1982 made repairs to the pickup in the amount of $5,688.90. While still in possession of the Dealer, the pickup was repossessed and sold by GMAC on January 3, 1983. On this date, GMAC released its lien on the face of the certificate of title. The retail installment contract was then paid in full from the sale proceeds. The Dealer's repair bill remains unpaid.

One month later, on February 7, 1983, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code.

The pickup, at the time it was damaged, was covered as required by the retail installment contract, by a policy of insurance issued by United States Fidelity and Guaranty Company. The insurance company, on January 17, 1983, issued a check in the sum of $5,638.98 payable jointly to the Debtor, the Dealer and GMAC. The Debtor turned this check over to the Trustee at the First Meeting of Creditors, and the Trustee thereafter caused a reissuance of this check to be made by the insurance company in the same amount but payable only to the Trustee. GMAC, after it released its lien on January 3, 1983, took no further steps to continue the perfection of its security interest in the proceeds.

The Trustee has taken the position that he is entitled to the insurance proceeds because by virtue of section 41–09–50(4) (U.C.C. § 9–504(4)) of the North Dakota Century Code GMAC, by selling the pickup, lost any security interest it may have had in the insurance proceeds and it consequently became unsecured as to those proceeds. The Trustee additionally argues that GMAC's claim to the insurance proceeds must initially fail because it failed to perfect its security interest in the proceeds as required by N.D.C.C. § 41–09–27(1) (U.C.C. § 9–306(1)). GMAC, on the other hand, argues that the insurance proceeds are proceeds of the collateral under N.D. C.C. § 41–09–27(1) to which it was entitled under the retail installment contract. From this it argues that the sale of the pickup in January of 1983, while perhaps discharging its security interest in the pickup, did not affect in any respect its security interest in the proceeds. GMAC has also taken the position that while the foregoing section may affect GMAC's secured position, it does not correlatively vest either the Debtor or the Trustee with an interest in the insurance payment.

The issue here is two-fold: First, what is the affect of GMAC's failure to perfect its security interest in the insurance proceeds; and, secondly, is whether an authorized sale of collateral has the affect of discharging a security interest in proceeds. The question of perfection will be addressed first.

■ ■ N.D.C.C. § 41–09–27(1) defines the term "proceeds" as including insurance payable by reason of loss or damage. In order for insurance proceeds to be included as a part of the secured collateral, it is not necessary that a policy of insurance be referred to in the security agreement. It is sufficient for purposes of section 41–09–27(1) that the security agreement merely refer to "proceeds of the property". Such wording does indeed exist in paragraph 12 of the retail installment contract between GMAC and the Debtor and is sufficient to have originally vested GMAC with a security interest in any insurance payment. Subsection (3) of section 41–09–27 (U.C.C. § 9–306(3)) provides, however, that the security interest in proceeds remains continuously perfected so long as the interest in the original collateral was perfected and remains so. It becomes unperfected ten (10) days after receipt of the proceeds by the debtor unless a financing statement covering the original collateral also covers the proceeds or a security interest in the proceeds is perfected within the ten-day

period. GMAC, following the requirements of North Dakota law (N.D.C.C. § 35–01–05.1), perfected its interest in the pickup by denoting its interest in the certificate of title. By doing so, GMAC fully complied with the perfection requirements regarding the original collateral and under section 41–09–27(3) automatically became perfected as to any proceeds, including insurance payments, even though proceeds were not referred to on the certificate of title. The motor vehicle lien statute is the sole method of perfecting a security interest in a motor vehicle which is not inventory. N.D.C.C. § 41–09–23(3)(b) provides that the filing of a financing statement is not necessary to perfect a security interest in property subject to section 35–01–05.1 which is the North Dakota Motor Vehicle Title Registration Act. *See In re Buckley,* 5 B.R. 503 (D.C.Minn.1980) (construing North Dakota law). N.D.C.C. § 35–01–05.1 does not create a statutory lien or security interest but is merely a recording statute providing the means for perfecting a previously existing security interest in a motor vehicle. *See U.S. Nat. Bank v. Atlas Auto Body, Inc.,* 214 Neb. 597, 335 N.W.2d 288 (1983) which considered a similar Nebraska statute. Thus, compliance with N.D.C.C. § 35–01–05.1 is initially sufficient to perfect a security interest in proceeds as well. Neither section 41–09–23(3)(b) nor N.D.C.C. § 35–01–05.1 suggest or imply that the security interest in proceeds somehow remains perfected irrespective of an authorized disposition of the vehicle where the secured party has released its lien thereto. Once the vehicle itself is sold with the secured party's permission, the secured party not only loses its perfected security interest in the vehicle itself but also must lose its perfected security interest in the proceeds. Such a result is not unjust or unfair because it is anticipated that a party secured to a motor vehicle which has sustained damage or loss would be aware of such damage or loss and any pending insurance claim and thus would either a) not release its lien, or b) take steps towards further perfection before releasing such lien. GMAC, however, did release its lien in the pickup on January 3, 1983, some 14 days before the insurance payment ever came into existence on January 17, 1983. No financing statement was ever originally filed covering the proceeds independent of the certificate of title perfection which, after GMAC released its lien in the vehicle, left it with only one method with which to continue its perfected interest in the proceeds. This was to perfect its interest therein before expiration of the ten-day period which commenced to run on January 17, 1983.

■ If the dispute here involved only GMAC and the original party to the installment contract, it would make no difference whether GMAC's interest in the proceeds was perfected or not since the parties as between themselves would still be bound by the terms of the security agreement. Here, however, the issue becomes critical because it is not the Debtor but the Trustee who maintains he has a priority position as against GMAC. Under section 544(a) of the Bankruptcy Code, the trustee at the time of the bankruptcy filing becomes vested with the status of a hypothetical lien creditor regardless of knowledge or knowledge of other creditors. *See generally In re Johnson,* 28 B.R. 292 (Bkrtcy.N.D.Ill. 1983); *In re Tom Woods Used Cars, Inc.,* 24 B.R. 529 (Bkrtcy.E.D.Tenn.1982). The trustee is also armed with the provisions of the Uniform Commercial Code itself where in N.D.C.C. § 41–09–22(3) (U.C.C. § 9–301(3)) a lien creditor is defined as a "trustee in bankruptcy from the date of filing of the petition". Thus, as of February 7, 1983, the Trustee became a lien creditor. As of that date, GMAC's interest in the insurance payment remained unperfected, which brings section 41–09–22(1)(a) (U.C.C. § 9–301(1)(a)) into play. This provision of the Code mandates that an unperfected security interest is subordinate to the rights of a lien creditor. This being the case, the Trustee as lien creditor must prevail with respect to the insurance payment as against the claim of GMAC whose interest to such payment was unperfected.

Based upon the foregoing analysis, it is unnecessary to this decision to consider the operation or affect of N.D.C.C. § 41–09–50(4) (U.C.C. § 9–504(4)). However, assuming arguendo that GMAC had a perfected security interest in the proceeds, it would seem that interest would survive irrespective of a disposition of the original collateral. Section 41–09–50(4) has as its purpose to protect a purchaser of repossessed collateral. Certainly neither the seller nor purchaser of such collateral contemplates that insurance proceeds are to be a part of the sale. That those payments remain as a separate item of collateral is contemplated by section 41–09–27(3) which invisions a separate method of perfecting a security interest in proceeds even after the original collateral has been disposed of.

Accordingly, upon reconsideration, it is

ORDERED that the motion of General Motors Acceptance Corporation for reclamation of the insurance payment is denied.