**Elaine T. BUCCI**

**v.**

**INTERNAL REVENUE SERVICE and Richard Pion in his official capacity as revenue officer for the Internal Revenue Service.**

Civ. A. No. 86–0648 P.

United States District Court,
D. Rhode Island.

Jan. 7, 1987.

Anthony J. Bucci, Jr., Providence, R.I., for Elaine T. Bucci.

Everett Sammartino, Asst. U.S. Atty., Providence, R.I., Philip Karter, Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

On October 15, 1986, the Internal Revenue Service ("IRS") seized two automobiles owned by Anthony Bucci, Sr. ("the debtor"). Elaine T. Bucci ("the secured party") alleges that she held a prior perfected security interest in the two automobiles. On October 28, 1986 the secured party petitioned this Court for a temporary restraining order to restrain the IRS from advertising or selling the automobiles and to order the IRS to return the vehicles to her. On Friday, October 31, 1986, a conference on the motion was held in chambers among the interested parties. Owing to apparent

conflicts between the Rhode Island Commercial Code and the Rhode Island Motor Vehicle Statutes, I requested each party to submit memoranda on the relevant issues of law. Pending resolution of the disputed issues, the IRS agreed not to sell the two automobiles.

I have since reviewed the applicable law in light of the facts presented. For reasons discussed herein, I am denying the requested relief with respect to the two siezed automobiles, but I am ordering the IRS to return a mobile telephone that was installed in one of the cars when they were seized.

### Background

The secured party has alleged a number of facts, undisputed by the IRS, which are summarized here. On August 29, 1984 the debtor executed a note for value received and signed a security agreement, which granted Elaine T. Bucci a security interest in certain items designated as collateral. The designated collateral included "All Automobiles presently owned by the Debtor", plaintiff's exhibit A, security agreement § 2, and these were further described as including a "1978 Cadillac Seville, 1981 Oldsmobile Toronado, and 1982 Cadillac Fleetwood Brougham", security agreement appendix A, § 8. The security agreement also encompassed "any after acquired tangible personal property and equipment", security agreement § 2, and a similar provision is listed in appendix A, § 12. The appendix to the security agreement also specifies as collateral, "[a]ny and all office equipment, including but not limited to ... telephone equipment", appendix A. § 9. A financing statement describing the security agreement was filed in the Secretary of State's office on September 11, 1984.

In August 1983, and on three separate dates in 1985, the IRS made assessments for unpaid taxes against the debtor. Plaintiff's exhibit C, affidavit of Revenue Officer Richard D. Pion ("Pion affidavit"), ¶ 2. These assessments covered unpaid taxes from six separate years. Pion affidavit, ¶ 2. After penalties and interest were as-

sessed, the debtor's overdue tax liability amounted to $200,194.75 as of October 15, 1986. *Id.*, ¶ 4. The secured party alleges that the federal tax lien assessed in August, 1983, covering $65,545.18 in unpaid taxes from the year 1981, was released by the IRS on August 31, 1984. Plaintiff's memorandum at 2 and plaintiff's exhibit C. It is not clear whether this lien was part of or in addition to the $200,194.75 due as of October 15, 1986, which leaves a question as to whether the debtor's current tax liability remains above $200,000 or stands closer to $135,000. In either case, it remains undisputed that the debtor's overdue tax liability exceeds the combined value of the two cars seized. But the fact that all currently outstanding assessments were made in 1985 means that the unsatisfied federal tax liens arose after the execution of the 1984 security agreement and filing in the Secretary of State's office.

On October 15, 1986 the IRS entered residential premises at 25 Prosper Street, Providence, and seized the debtor's 1982 Cadillac Fleetwood Brougham and his 1978 Cadillac sedan. The 25 Prosper Street property is owned by the secured party, who alleges further that she continuously possessed both the automobiles and their certificates of title from the execution of the security agreement until their seizure by the IRS. Plaintiff's memorandum at 3–4. She also alleges that a mobile phone covered by the security agreement was inside one of the automobiles when they were seized.

### Discussion

Federal taxes unpaid after demand, along with penalties and interest thereon, become a lien in favor of the United States. 26 U.S.C. section 6321. In setting priorities between federal tax liens and security interests created under state law, the federal tax lien statute follows a first-in-time, first-in-right rule: "[t]he lien imposed by section 6321 shall not be valid as against any ... holder of a security interest ... until notice thereof ... has been filed by the Secretary or his delegate." 26 U.S.C.

section 6323(a); *see also United States v. Equitable Life Assurance Society of the United States*, 384 U.S. 323, 327, 86 S.Ct. 1561, 1564, 16 L.Ed.2d 593 (1966) ("As against a recorded federal tax lien, the relative priority of a state lien is determined by the rule 'first in time is the first in right,' which in turn hinges upon whether, on the date the federal tax lien was recorded, the state lien was 'specific and perfected.' "). As defined by the federal tax lien statute,

A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. section 6323(h)(1).

With respect to the two automobiles and the mobile phone at issue here, it is not disputed that the secured party "parted with money or money's worth." The dispositive question is whether her interest in these items would be "protected under local law against a subsequent judgment lien arising out of an unsecured obligation." Because different rules govern the automobiles on the one hand and the mobile phone on the other, I discuss these items separately below.

*1. Priorities as to the automobiles*

The local law governing priorities between the secured party's interest and that of a subsequent judgment lien creditor is contained in R.I.G.L. section 6A–9–301, which provides in pertinent part,

(1) ... [A]n unperfected security interest is subordinate to the rights of

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

(b) A person who becomes a lien creditor before the security interest is perfected;

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

(4) A person who becomes a lien creditor while a security interest is perfected takes subject to the security interest....

The dispositive issue is thus whether the secured party perfected her security interest in the two automobiles. R.I.G.L. section 6A–9–302 lists those security interests for which filing is a prerequisite to perfection, and those for which the filing provisions of Chapter 9 do not apply. Security interests in automobiles fall within the latter class: "The filing of a financing statement otherwise required by this chapter is not necessary or effective to perfect a security interest in property subject to: ... (b) Chapter 3.1 of title 31...." R.I.G.L. section 6A–9–302(3). The cross-reference in subsection 9–302(3)(b) is to a chapter entitled "Certificates of Title and Security Interests." Section 31–3.1–19 of this chapter governs the method of perfecting security interests in motor vehicles. Subsection 31–3.1–19(b) provides that such a security interest "is perfected by the delivery to the division of motor vehicles of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and may also be perfected by the execution of a security lien statement and required fee and registration card." Subsection 31–3.1–19(a) provides that the methods of perfection prescribed in subsection 31–3.1–19(b) are exclusive with respect to motor vehicles: "[A] security interest in a vehicle of a type for which a certificate of title is required is not valid against creditors of the owner or subsequent transferees of lienholders of the vehicle unless perfected as provided in this chapter." [1]

Subsection 6A–9–302(3)(b)'s cross-reference to such a clearly worded statute plainly indicates a legislative intent to override, with respect to motor vehicles, the filing rules prescribed by the Rhode Island Commercial Code, Title 6A, Chapter 9. This reading is reinforced by subsection 6A–9–302(4)'s elaboration on the impact of such cross-referencing: "[c]ompliance with a statute or treaty described in subsection (3)

---

**1.** Subsection 31–3.1–19(b) does, by a cross-reference to section 31–3.1–18, carve out three exceptional situations wherein the procedures of Title 31, Chapter 3.1 are not exclusively controlling. The secured party fits into none of these exceptions.

is equivalent to the filing of a financing statement under this chapter, and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith, except as provided in § 6A–9–103 on multiple state transactions." This carving out of a single, multistate transactions exception to the exclusivity of the cross-referenced motor vehicle statutes supports an additional and very significant implication: namely, that outside the multistate transactions context, all of the Commercial Code's alternative methods of perfecting security interests are similarly inoperative with respect to motor vehicles. *See also* comment 8 to section 6A–9–302 ("[S]ubsection (4) makes clear that when such a system [outside Article 9] exists perfection of a relevant security interest can be had only through compliance with that system...."); *Co-Op Credit Union v. Geremia*, 16 B.R. 799 (Bankr.D.R.I. 1982) ("the procedure set out in R.I.Gen. Laws § 31–3.1–19 is exclusive").

■ It logically follows not only that the filing rules of Chapter 9 are inoperative in the motor vehicle context, but also that perfection by possession, section 6A–9–305, does not apply to security interests in automobiles. Consequently, the secured party's failure to perfect her security interest according to the methods prescribed in section 31–3.1–19 conclusively precludes this Court from finding that she had a perfected security interest in the two automobiles. All of the statutory sections under which she claims to have perfected her security interest—perfection by possession, 6A–9–305; filing in advance of perfection, 6A–9–312(5)(a); and good faith filing in an improper place, 6A–9–401(2)—are preempted by the certificate of title perfection statute, 31–3.1–19. Her security interest in the automobiles is therefore not protected under local law against a subsequent lien creditor, 6A–9–301(1)(b), and as such it is not a security interest entitled to priority over a federal tax lien, 26 U.S.C. section 6323(h)(1). *See, Ceco Corp. v. United States*, 554 F.Supp. 569 (D.Minn.1982).

### 2. Priorities as to the mobile phone

As discussed *supra*, the priorities issue turns on whether the secured party's interest in the mobile phone would be protected under local law against a subsequent judgment lien creditor, 26 U.S.C. section 6323(h)(1). At the outset, it is clear that the mobile phone was covered by the security agreement. The agreement covered "any after acquired tangible personal property and equipment," security agreement § 2, plaintiff's exhibit A, and the appendix to the security agreement specified "[a]ny and all office equipment, including but not limited to ... telephone equipment," appendix to security agreement, § 9.

It is also clear that the secured party perfected her security interest in the mobile phone. Mobile phones are a goods, section 6A–9–105(1)(h), for which filing is a prerequisite to perfection, 6A–9–302(1), and for which the Secretary of State's office is the proper place to file a financing statement, 6A–9–401(1)(c). These steps were taken by the secured party, as is indicated by the copy of her financing statement plaintiff's exhibit B.

Ordinarily, a perfected security interest in goods takes priority over a subsequent judgment lien creditor, section 6A–9–301(4). One exception to this rule occurs when the goods are installed in other goods so as to be deemed accessions, section 6A–9–314. The special priority rules governing accessions provide that even prior perfected security interests in accessions are subordinate to "[a] creditor with a lien on the whole subsequently obtained by judicial proceedings," 6A–9–314(3)(b). Since the IRS is deemed, for purposes of the federal tax lien statute, a subsequent judgment creditor with respect to the two automobiles, the dispositive issue here is whether the mobile phone is an accession within the meaning of 6A–9–314.

The statute describes an accession as goods "installed in or affixed to other goods," 6A–9–314(1), and comment 2 to this section provides one example of such goods, "a new motor in an old car." No further guidance is provided by the Com-

mercial Code. At common law, "most courts, recognizing the fact that automobile parts and accessories are generally standardized, uniform, and interchangeable, and may be detached without harm to the rest of the automobile or to the accessory itself, have held ... the various types of accessories commonly placed upon cars to be separate and distinct, and not accessions thereto." 1 *Am.Jur.*2d, Accession and Confusion § 8 at 278. The Rhode Island courts follow this general rule. *See, Franklin Service Stations, Inc. v. Sterling Motor Truck Co. of New England,* 50 R.I. 336, 337–38, 147 A. 754 (1929) (New tires placed on mortgaged truck do not merge into the mortgaged property under doctrine of accession, because "[t]hese tires were not an integral and permanent part of the truck; they were temporary and separable attachments on the moving parts of the truck; they could be removed without injury to the truck and used elsewhere."). This rule has been applied elsewhere in holding that a citizens band radio does not constitute an accession to a car. *Mixon v. Georgia Bank & Trust Co.,* 154 Ga.App. 32, 267 S.E.2d 483 (1980).

In light of these cases, I cannot find as a matter of law that an "easily installed and removable" mobile phone, plaintiff's memorandum at 7, is an accession to the automobile in which it is installed. As such, it is not governed by the special priority rules for accessions, 6A-9-314. Rather, as collateral in which the secured party has a perfected security interest, the mobile phone is protected against the claim of a subsequent judgment lien creditor, 6A-9-301(4). The secured party's interest in the mobile phone therefore takes priority over the federal tax lien, 26 U.S.C. sections 6323(h)(1) and 6323(a).

### Conclusion and Order

The secured party has requested this Court to order the return of the seized property, pursuant to the Court's powers under 26 U.S.C. section 7426. This statute states in pertinent part, "[i]f the court determines that such property has been wrongfully levied upon, the court may (A) order the return of specific property if the United States is in possession of such property...." 26 U.S.C. section 7426(b)(2).

I have found that the IRS's lien on the two seized automobiles takes priority over the secured party's unperfected security interest in them. But I have further found that the IRS's lien on the seized mobile phone is subordinate to the secured party's perfected security interest therein, which means that the mobile phone has been wrongfully levied upon.

Based on these findings, I hereby deny the requested relief with respect to the two seized automobiles and grant the requested relief with respect to the seized mobile telephone. The IRS is hereby ordered to return the seized mobile telephone to Elaine T. Bucci.

So ordered.