In re Brian M. CHAPMAN and Diane J. Chapman, Debtors.

Phillip D. ARMSTRONG, Trustee of the Estate of Brian M. Chapman and Diane J. Chapman, Plaintiff,

v.

METROPOLITAN FEDERAL BANK, MINOT, NORTH DAKOTA, Defendant.

Bankruptcy No. 88–05900.

Adv. No. 89–7053.

United States Bankruptcy Court, D. North Dakota.

Jan. 31, 1990.

Gregory Selbo, Fargo, N.D., for defendant.

Phillip D. Armstrong, Minot, N.D., for plaintiff.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This adversary proceeding was commenced by Complaint filed on July 31, 1989, and as later amended on January 19, 1990. It is alleged that defendant Metropolitan Federal Bank's (Bank) security interest in a travel trailer was at the time of its repossession defective and inferior to the trustee's status as a lien creditor under section 544. The trustee, Phillip D. Armstrong, (Trustee) also seeks avoidance of the transfer pursuant to section 547 and recovery of the trailer itself or its value.

The Bank's principal defense is that by virtue of retaining a manufacturer's statement of origin, it perfected its security interest thereby. The parties waived trial, agreeing that the case could be determined upon an agreed statement of facts filed January 22, 1990.

From the Stipulation of Facts and the documents submitted therewith the facts as relevant are as follows:

### Findings of Fact

On August 4, 1988, the Debtors purchased an Excel travel trailer from the dealer, Bratz Enterprises, and financed the purchase price by entering into a retail installment contract and security agreement. By this contract the Debtor financed $11,400.00 over ten years. The contract was assigned to the Bank without

recourse on August 4, 1988. The manufacturer, Peterson Industries, Inc., delivered a manufacturer's statement of origin to the dealer, Bratz Enterprises, who endorsed it in blank and gave it to the Bank along with the assigned contract.

Unable to keep up with payments, the Debtors returned the trailer to the Bank on October 24, 1988. The Bank accepted possession, advising the Debtor by letter that as holder of a security interest that after a seven day redemption period the trailer would be sold with the Debtors being held liable for any deficiency. As of October 25, 1988, the payoff balance was $11,-762.14. No redemption occurred and on July 25, 1989, the trailer was sold for a net to the Bank of $10,900.00.

Neither the Bank nor anyone else ever applied for or received a certificate of title on the trailer but at all times through and including July 25, 1989, the Bank retained possession of the statement of origin as well as possession of the trailer itself.

The Debtors' Chapter 7 petition was filed on October 28, 1988.

## CONCLUSIONS OF LAW

### 1.

The dispositive issue in this case is whether the Bank, by virtue of the manufacturer's statement of origin had a perfected security interest in the trailer impervious to the trustee's section 544 strong-arm powers. The question of perfection or the lack thereof also bears upon whether it benefited from a preferential transfer in October 1988 when it recovered possession of the trailer.

Under section 544(a) of the Bankruptcy Code, the trustee at the time of the bankruptcy filing on October 28, 1988, became vested with the status of a hypothetical lien creditor regardless of knowledge or knowledge of other creditors. *In re Star Safety, Inc.*, 39 B.R. 755 (Bankr.D.N.D.1984). Moreover, the Uniform Commercial Code itself, as adopted in North Dakota, renders an unperfected security interest subordinate to the claim of a "lien creditor", the definition of which is inclusive of a trustee

in bankruptcy from and after the petition filing. N.D.Cent.Code § 41–09–22 (U.C.C. § 9–301).

The Bank equates the effect of its possession of the manufacturer statement of origin with possession of a certificate of title and thus believes the requirements of N.D.Cent.Code § 35–01–05.1 are satisfied thereby. Section 35–01–05.1 of the North Dakota Century Code provides:

> "No security interest in a vehicle which is not inventory held for sale is valid as against subsequent purchasers and encumbrances of the property in good faith and for value unless the security interest is clearly indicated upon the certificate of title to the vehicle or unless such certificate of title is in the possession of the secured party ..."

This court has recently construed the foregoing statute as expressly providing for perfection of a security interest in a motor vehicle either by the secured party's interest being noted on the face of the certificate of title or by the certificate of title being in the possession of the secured party. *In re Halvorson*, 102 B.R. 736 (Bankr. D.N.D.1989); *In re Star Safety, Inc.*, *supra*.

The argument has been made, albeit with limited success, that a security interest in a motor vehicle can be perfected by possession of the vehicle itself, N.D.Cent.Code § 35–01–05.1 notwithstanding. Most courts considering the effect of a motor vehicle exception to the Uniform Commercial Code filing provisions have held that all of the U.C.C.'s alternative methods of perfecting a security interest are rendered inoperative with respect to motor vehicles. This court in *Star Safety, supra* held that the motor vehicle lien statute was the sole method of perfecting a security interest in motor vehicles. That conclusion was based upon the case of *In re Buckley*, 5 B.R. 503 (D.C.Minn.1980), a Minnesota case which attempted to reconcile section 35–01–05.1 with N.D.Cent.Code § 41–09–26 (U.C.C. § 9–305). U.C.C. § 9–305 provides without any enumerated exceptions that a security interest may be perfected by possession without relation back and continues so long

as possession is retained. *Buckley* and allied decisions have concluded, without any critical analysis, that a reading of the statutes suggests the motor vehicle lien statute exception to U.C.C. § 9–302 was intended to create the motor vehicle lien statutes as the exclusive means of perfecting a security interest in a motor vehicle. *Bucci v. Internal Revenue Service*, 653 F.Supp. 479 (D.C.R.I.1987); *In re Davis*, 57 B.R. 351 (Bankr.S.D.1985); *In re Corsica Enterprises*, 40 B.R. 769 (Bankr.S.D.1984). Other courts, however, have concluded that statutes similar to N.D.Cent.Code § 35–01–05.1 are not exclusive methods of perfecting security interests in motor vehicles and that U.C.C. § 9–305 is an alternative method by which a previously unperfected motor vehicle security interest can be perfected by possession. *In re Osborn*, 389 F.Supp. 1137 (D.C.N.D.N.Y.1975); *In re Char*, 15 U.C.C.Rep. 509 (Bankr.S.D.N.Y.1974).

Those courts opting for the motor vehicle registration statutes as an exclusive method of perfection seem to ignore or at least gloss over the language of U.C.C. § 9–302. As adopted in North Dakota section 9–302 (N.D.Cent.Code § 41–09–23) can be read as a U.C.C. provision which merely sets out those security interests to which the *filing provisions* of Article 9 do not apply. It is not a general statement of those transactions to be excluded from Article 9 altogether. N.D.Cent.Code § 41–09–04 (U.C.C. § 9–104) is the provision setting forth those transactions expressly excluded from Article 9 generally, and motor vehicle transactions are not among the enumerated exceptions.

N.D.Cent.Code § 41–09–23(3)(b) (U.C.C. § 9–302(3)(b)) merely provides that "the filing of a *financing statement* otherwise required by this chapter is not necessary or effective to perfect a security interest in property subject to section 35–01–05.1 ..."

Nowhere in section 41–09–23 is it stated that perfection of a security interest in motor vehicles can be accomplished *only* by the certificate of title method. Indeed, N.D.Cent.Code § 41–09–23(1)(a) (U.C.C. § 9–302(1)(a)) provides that a financing statement is not necessary to perfect a security interest where the collateral is in possession of the secured party.

The *Star Safety* case did not directly address whether N.D.Cent.Code § 41–09–26 (U.C.C. § 9–305) has any validity with regards to motor vehicles and no subsequent decision of this court or of the North Dakota Supreme Court has addressed it. The minority view holds an attraction more commensurate with how this court believes N.D.Cent.Code § 41–09–23 ought to be interpreted with regards to N.D.Cent.Code § 41–09–23 (U.C.C. § 9–302). Having said this, however, the court is not prepared at this time to reverse *Star Safety* or ignore the weight of precedent particularly the case of *In re Buckley*. Until the issue is more fully explored in the North Dakota courts and until it can be more completely persuaded that the minority view is indeed correct, it will continue to adhere to the position that N.D.Cent.Code § 35–01–05.1 is the exclusive method by which a security interest in a motor vehicle may be perfected.[1]

2.

Except as otherwise enumerated in N.D. Cent.Code § 39–05–02.2, every owner of a vehicle for which no certificate of title has been issued must make application for the same in a manner prescribed by N.D.Cent. Code § 39–05–05. As long as a vehicle is held for sale by a manufacturer or dealer no certificate of title need be obtained. N.D.Cent.Code § 39–05–02.2(2). Once sold, however, the law provides that within fifteen days of the sale and delivery the vendee of a motor vehicle must be given a certificate of title. If subject to any liens

---

**1.** It should be noted that even if possession were accepted by this court as a valid method of perfection, the mere act of perfecting a security interest in itself falls within the definition of a "transfer" for purposes of section 547. *See* 11 U.S.C. § 101(50). *In re Four Winds Enterprises, Inc.*, 94 B.R. 694 (Bankr.S.

D.Calif.1988); *In re Wegner*, 61 B.R. 414 (Bankr.Mont.1986). Thus, even though the Bank's perfected security interest might not be avoidable under section 544, it still would remain subject to advoidance under section 547 of the Code.

the certificate is to be delivered to the first lien holder. N.D.Cent.Code § 39–05–17.1.

In the instant case Bratz Enterprises as dealer was not required to have a certificate of title for the trailer so long as it held the trailer for sale. Once it sold and delivered the trailer to the Debtors on August 4, 1988, a certificate of title had to be provided by Bratz or by the Debtors themselves.

 In order to obtain a certificate of title on a new vehicle a manufacturer's statement of origin must be attached to the application. N.D.Cent.Code § 39–05–05(3). The Debtors never had possession of the manufacturer's statement of origin and thus could not have obtained a certificate of title on the trailer. The manufacturer's statement of origin does not create or perfect a security interest—that can be achieved only in a manner consistent with N.D.Cent.Code § 35–01–05.1. The manufacturer's statement of origin is not a certificate of title and is ineffective as such even when in the hands of a party claiming a security interest.

As a consequence, the Bank's interest was unperfected throughout its period of possession and as of October 28, 1988, its interest became subordinate to the trustee's position as a hypothetical lien creditor. The effect of the Bank's security interest being unperfected both at the time of repossession in October 1988 and at the time of the November 1988 bankruptcy filing gives rise not only to a section 544 lien avoidance situation but also gives rise to an avoidable preference under section 547. To constitute an avoidable preference there must have been a transfer of an interest in a debtor's property:

1. To or for the benefit of a creditor;

2. For or on account of an antecedent debt owed by the debtor before such transfer was made;

3. Made while the debtor was insolvent;

4. On or within ninety days before date of filing;

5. That enabled the creditor to receive more than would have been received if the transfer had not been made.

The act of recovering the trailer in October whether by voluntary or involuntary means was a transfer of the Debtors' property to the benefit of the Bank in consequence of an antecedent debt. *See e.g., In re Brown,* 18 B.R. 956 (Bankr.S.D.Ill.1982). It was accomplished within ninety days of the bankruptcy filing and at a time when insolvency is presumed under the Code. 11 U.S.C. § 547(f). It permitted the Bank to receive more than it otherwise would have received because of the priority effect of section 544 upon its unsecured position.

Under section 550 of the Code the trustee may recover for the benefit of the estate any property or its value the transfer of which was avoided under section 544 or section 547. It is appropriate, since the trailer has been sold, that the trustee recover the sale proceeds in the sum of $10,900.00.

Accordingly, IT IS ORDERED that judgment be entered in favor of Phillip D. Armstrong, Trustee and against the defendant, Metropolitan Federal Bank, in the sum of Ten thousand nine hundred and no/100 Dollars.